# In the United States Court of Federal Claims

No. 05-776 C
(Filed: May 30, 2008)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| AG-INNOVATIONS, INC., LARRY * | |
| FAILLACE, LINDA FAILLACE, * | Discovery; Motion for Protective Order; |
| HOUGHTON FREEMAN, DOREEN * | Motion to Compel; RCFC 26(b); |
| FREEMAN, SKUNK HOLLOW * | RCFC 26(c); RCFC 30(b)(6); Designated |
| FARM, INC., & FREEMAN FAMILY LLC,* | Deposition Testimony; Required Showing |
| * | for "Good Cause"; Certification of Good |
| Plaintiffs, * | Faith Conferment; RCFC 37(a)(4). |
| * | |
| v. * | |
| * | |
| THE UNITED STATES, * | |
| * | |
| Defendant. * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jonathan Lynwood Abram, Washington, DC, for plaintiffs.

Sheryl L. Floyd, United States Department of Justice, Washington, DC, for defendant.

**RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND
PLAINTIFFS' CROSS-MOTION TO COMPEL**

**SWEENEY**, Judge

This discovery dispute comes before the court upon Defendant's Motion for Protective Order to Preclude the Taking of a Rule 30(b)(6) Deposition on Certain Topics ("motion") and Plaintiffs' Cross-Motion to Compel the United States to Identify and Produce a Rule 30(b)(6) Designee(s) on Certain Topics ("cross-motion to compel"). The parties' dispute concerns eleven of a total of twenty-one topics contained in plaintiffs' notice of deposition of the United States Department of Agriculture ("USDA"). Following briefing and continued discussions, the parties represented that they reached a resolution as to five of the eleven disputed topics. J. Status Report 1, Feb. 15, 2008. Therefore, the court addresses the remaining six topics in dispute. For the reasons set forth below, defendant's motion is granted in part and denied in part, and plaintiffs' cross-motion to compel is granted in part and denied in part.

## I.  BACKGROUND

### A.  Nature of Plaintiffs' Claims

In this takings case, plaintiffs allege that the USDA "slaughtered hundreds of healthy, valuable, European-imported and domestically bred milking sheep, and destroyed their genetic stock material, on the premise that the sheep were infected with what the Government termed 'an atypical [transmissible spongiform encephalopathy (TSE)] of foreign origin.'"  Am. Compl. ¶ 10 (alteration in original); see also id. ¶ 44 (alleging that defendant "seized and destroyed germ plasm, gourmet cheese stock, crops, buildings, cheesemaking equipment, and other business-related assets").  Plaintiffs argue that an atypical TSE of foreign origin "is neither an actual nor a scientifically-recognized disease."  Pls.' Mem. Supp. Pls.' Opp'n Def.'s Mot. Protective Order Preclude Taking Rule 30(b)(6) Dep. Certain Topics & Pls.' Cross-Mot. Compel United States Identify Produc. Rule 30(b)(6) Designee(s) Certain Topics ("Pls.' Opp'n & Cross-Mot.") 4.  Rather, plaintiffs maintain that defendant "declared the sheep to be 'affected with or exposed to' this so-called 'disease' to justify their slaughter as a pretext for maintaining the perception that the United States was free of Bovine Spongiform Encephalopathy (BSE), a TSE commonly found in cattle."  Id.  Alternatively, plaintiffs allege that, "if the sheep are found to have been 'affected or exposed' to any communicable disease," then defendant "acted arbitrarily and capriciously and in abuse of its discretion in calculating the sheep's fair market value . . . ."  Am. Compl. ¶ 51; see also id. (alleging that defendant considered "irrelevant factors and unsupported assumptions" when making valuation assessments); id. ¶ 12 (claiming that, following the slaughter of plaintiffs' sheep, the USDA "improperly, arbitrarily, capriciously, and in abuse of its discretion, calculated the sheep's fair market value by failing to account for the sheep's superior quality and economic purpose as a business asset and by making unsupported assumptions regarding their use as meat and feed and their conformation"); id. ¶ 52 (alleging that defendant selected appraisers who exhibited bias and possessed conflicts of interest, which "prevent[ed] a proper, accurate assessment of the sheep's fair market value").

### B.  Procedural History

Plaintiffs filed their initial complaint on July 22, 2005, and the parties exchanged initial disclosures pursuant to Rule 26(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC") on March 14, 2006.  See Pls.' Opp'n & Cross-Mot. 6.  Pursuant to the court's April 5, 2006 order, fact and expert discovery were scheduled to conclude by December 15, 2006, and February 28, 2007, respectively.  The parties commenced discovery in August 2006.  Def.'s Mot. Protective Order Preclude Taking Rule 30(b)(6) Dep. Certain Topics ("Def.'s Mot.") 3; Pls.' Opp'n & Cross-Mot. 6.  By order dated September 13, 2006, the court extended the deadlines for the conclusion of fact and expert discovery to January 5, 2007, and March 19, 2007, respectively.

As discovery progressed, the parties encountered disagreements over depositions and other discovery.  On April 6, 2007, the parties represented to the court that "[d]iscovery had not yet concluded" and that they "have not been able to agree upon how much additional time will be

required to complete discovery . . . ." J. Status Report 1, Apr. 6, 2007. By mid-June 2007, the parties were unable to agree upon plaintiffs' requests to depose witnesses pursuant to RCFC 30(b)(6). See Order 1, June 20, 2007. The following section details the dispute that precipitated the instant motions.

### C. The Instant Discovery Dispute[1]

        According to plaintiffs, a "large number" of individuals were involved in the events and decisions underlying the claims in this case. Pls.' Opp'n & Cross-Mot. 6. Accordingly, plaintiffs filed a motion seeking leave to conduct more than ten depositions on November 22, 2006. During a status conference held on January 22, 2007, the parties "agreed to utilize RCFC 30(b)(6) as a mechanism to target topics rather than individuals in order to pare down the individuals whom plaintiffs would have to depose." Id. at 7; see also Def.'s Reply Pls.' Mem. Supp. Pls.' Opp'n Def.'s Mot. Protective Order Preclude Taking Rule 30(b)(6) Dep. Certain Topics & Def.'s Opp'n Pls.' Cross-Mot. Compel United States Identify & Produc. Rule 30(b)(6) Designee Certain Topics ("Def.'s Reply & Opp'n") 3 ("During the January 22nd status conference, the Government agreed to go forward with Rule 30(b)(6) depositions upon the assumption that using this method would reduce the number of witnesses who had to be deposed, not increase the number of witnesses who would have to be deposed."). The court denied plaintiffs' motion without prejudice and instructed the parties to "cooperate to conduct discovery expeditiously."[2] Order 2, Jan. 24, 2007. Following the January 22, 2007 status conference, the parties proceeded with discovery, and plaintiffs deposed Dr. Linda Detwiler on January 30, 2007. Pls.' Opp'n & Cross-Mot. 8. According to plaintiffs, "[a]t no point prior to or during this deposition did the Government indicate that Dr. Detwiler could potentially be designated in response to any RCFC 30(b)(6) topic." Id.

        Defendant notes that five depositions–those of Dr. Detwiler, Dr. Richard Rubenstein, Dr. William Smith, Dr. Wayne Zeilenga, and Mr. Yves Berger–occurred before plaintiffs served their RCFC 30(b)(6) deposition notices. Def.'s Reply & Opp'n 4. As such, defendant emphasizes that

---

        [1] In addition to defendant's motion and plaintiffs' cross-motion to compel, defendant filed a Reply to Plaintiffs' Memorandum in Support of Plaintiffs' Opposition to Defendant's Motion for Protective Order to Preclude the Taking of a Rule 30(b)(6) Deposition on Certain Topics & Defendant's Opposition to Plaintiffs' Cross-Motion to Compel the United States to Identify and Produce a Rule 30(b)(6) Designee on Certain Topics ("reply and opposition"), and plaintiffs filed their Reply in Support of Plaintiffs' Cross-Motion to Compel the United States to Identify and Produce a Rule 30(b)(6) Designee(s) on Certain Topics ("reply"). Defendant filed separate, consecutively paginated appendices with its motion and reply and opposition, and plaintiffs filed separate, consecutively paginated appendices with their cross-motion to compel and reply.

        [2] The court also denied defendant's motion for a protective order without prejudice. See Order 2, Jan. 24, 2007.

it "could not possibly have notified the plaintiffs that these witnesses were likely to be USDA Rule 30(b)(6) designees because the Government did not know what plaintiffs' USDA Rule 30(b)(6) deposition topics were until <u>after</u> these witnesses had been deposed." <u>Id.</u> at 4. Plaintiffs served two RCFC 30(b)(6) notices upon defendant in February 2007. The first, directed toward the National Veterinary Services Laboratory ("NVSL"), was served on February 8, 2007. Def.'s App. 4-11. The second, directed toward the USDA, was originally served on February 12, 2007.[3] <u>Id.</u> at 13-22. In their RCFC 30(b)(6) NVSL notice, plaintiffs identified fourteen topics "addressing certain information and methodologies relating to testing performed by or for the NVSL." Pls.' Opp'n & Cross-Mot. 8; <u>see also</u> Def.'s App. 4-11 (containing plaintiffs' RCFC 30(b)(6) NVSL notice). In their RCFC 30(b)(6) USDA notice, plaintiffs identified twenty-one topics "concerning certain decisions made by–and other critical information held by–USDA personnel." Pls.' Opp'n & Cross-Mot. 8; <u>see also</u> Def.'s App. 13-22 (containing plaintiffs' original RCFC 30(b)(6) USDA notice). These notices were, according to plaintiffs, "in line with the parties' discussions and agreements about focusing the depositions on the most important governmental personnel . . . ." Pls.' Opp'n & Cross-Mot. 8.

In a February 12, 2007 letter to defendant's counsel that accompanied plaintiffs' RCFC 30(b)(6) USDA notice, plaintiffs' counsel stated:

> [S]everal of the topics identified in the Notice may already have been addressed by one or more individuals, or will be addressed by certain individuals whose depositions already have been scheduled. To the extent certain individuals already have been deposed, I am willing to discuss designating certain portions of such depositions as responsive to those topics so as to avoid having to recall such individuals. For other individuals yet to be deposed, I would appreciate you letting me know prior to the deposition what topic(s) each will address . . . .

Def.'s App. 12. However, plaintiffs state that, "[f]rom February 12, 2007, until mid-May, plaintiffs received no response from the Government on the Original USDA 30(b)(6) Deposition Notice, with the exception of Topic ## 3 and 21," despite "repeated[] request[s]" to schedule the RCFC 30(b)(6) USDA depositions. Pls.' Opp'n & Cross-Mot. 9; <u>see also id.</u> (recounting several attempts to schedule depositions); Pls.' Reply Supp. Pls.' Cross-Mot. Compel United States Identify & Produc. Rule 30(b)(6) Designee(s) Certain Topics ("Pls.' Reply") 2 ("For <u>more than five months</u>, the Government completely neglected [its] duty [to designate a live witness] as to all but two topics, leaving plaintiffs no choice but to move to compel."); <u>id.</u> ("The Government's lack of diligence and timely response to plaintiffs' 30(b)(6) deposition notice to the USDA created the issue about which the Government now complains."). <u>But see</u> Def.'s Reply & Opp'n 6 (stating that defendant defended five depositions, including the deposition of Dr. Mark Hall, who was defendant's designee in response to plaintiffs' RCFC 30(b)(6) NVSL notice, deposed six of plaintiffs' witnesses, and "worked with plaintiffs' counsel" to schedule four additional

---

[3] As discussed <u>infra</u>, plaintiffs served upon defendant a revised RCFC 30(b)(6) USDA notice on June 28, 2007. Def.'s App. 116-25.

depositions of government witnesses); Pls.' App. 15-18, 21-26 (containing several April 2007 and May 2007 electronic mail communications between counsel regarding the scheduling of depositions). In its May 24, 2007 response to plaintiffs' RCFC 30(b)(6) USDA notice, defendant objected that the topics "covered many of the subject areas upon which the Government witnesses had previously provided deposition testimony."[4] Def.'s Mot. 4; see also Def.'s App. 24 ("We note further that you have already conducted a Rule 30(b)(6) deposition of topics numbered 10, 12, 15, 16, 17, and 18. Conducting another Rule 30(b)(6) deposition on these topics is unnecessarily duplicative."). Defendant instead agreed to proceed with live testimony concerning topic numbers 3 and 21, Def.'s App. 24, and designated previously obtained deposition testimony as responsive to RCFC 30(b)(6) USDA topic numbers 3-6 and 9-20, id. at 25-56. Defendant submitted a corrected copy of its response to plaintiffs on May 29, 2007. Id. at 63; Def.'s Mot. 5.

Throughout their dispute, the parties indicated that they "may need the Court's assistance." J. Status Report 1, Apr. 6, 2007. Accordingly, the court conducted two status conferences, the first on April 23, 2007, and the second on May 29, 2007.[5] According to plaintiffs, other depositions were taken following the April 23, 2007 status conference "with no reference to these deponents or their deposition testimony being used to satisfy any of the topics in the Original USDA 30(b)(6) Deposition Notice." Pls.' Opp'n & Cross-Mot. 11; see also id. at 12 (stating that defendant "made no mention" of offering Dr. Katherine O'Rourke's testimony in response to any RCFC 30(b)(6) USDA topic). But see Pls.' App. 25 (containing a May 7, 2007 electronic mail communication from defendant's counsel stating that "the court has given [defendant] until May 24th to identify [its] Rule 30(b)(6) deposition witnesses"). Defendant states that, "[t]wo hours prior" to the May 29, 2007 status conference, "plaintiffs notified the Government that they believed that the Government's [May 24, 2007] designations of testimony in response to plaintiffs' Rule 30(b)(6) deposition notice were not adequate because they allegedly contained incorrect page references and the designations purportedly failed to satisfy plaintiffs' need for evidence on certain topics." Def.'s Mot. 5; Def.'s App. 58-62. Plaintiffs did agree, however, to accept designated testimony in response to topic numbers 6, 10, and 15-19, subject to certain revisions in defendant's designations. Pls.' Opp'n & Cross-Mot. 13; Def.'s App. 58.

---

[4] Plaintiffs emphasize that defendant's response came "almost four and one-half months after plaintiffs gave notice of their intent to seek an RCFC 30(b)(6) deposition of the USDA and almost three and one-half months after service of the Original USDA 30(b)(6) Deposition Notice . . . ." Pls.' Opp'n & Cross-Mot. 12.

[5] During the first status conference on April 23, 2007, plaintiffs "raised the issue that the Government still had not designated any witnesses, with the exception of Dr. [Diane] Sutton, in response to the Original USDA 30(b)(6) Deposition Notice." Pls.' Opp'n & Cross-Mot. 11. The parties agreed that additional time was necessary to complete discovery. See Order 1, Apr. 23, 2007. The court scheduled a second status conference for May 29, 2007.

During their May 29, 2007 status conference with the court, the parties agreed to "continue to work together to try to resolve these difficulties." Def.'s Mot. 5. To that end, plaintiffs, on June 1, 2007, proposed the following terms: they would agree to narrow the scope of RCFC 30(b)(6) USDA topic numbers 4-5, 7-9, 11-14, and 20 in exchange for defendant's agreement to provide live witness testimony for revised topic numbers 2, 4-5, 7-9, 11-14, and 20. Def.'s App. 64; see also id. at 64-66 (containing proposed revisions to these deposition topics). Defendant emphasizes that plaintiffs "did not serve their further revised USDA Rule 30(b)(6) deposition topics until June 28, 2007." Def.'s Reply & Opp'n 8; see also Def.'s App. 116-25 (containing plaintiffs' revised RCFC 30(b)(6) USDA deposition notice); id. at 126-27 (stating that plaintiffs "had not formally revised their Rule 30(b)(6) deposition topics in their June 1, 2007 letter). In its June 19, 2007 response to plaintiffs' June 1, 2007 communication, defendant "declined plaintiffs' offer to designate any additional witness(es)." Pls.' Opp'n & Cross-Mot. 14; Def.'s App. 67-74. In doing so, defendant noted that it "do[es] not believe that [plaintiffs] have completely addressed [its] objections." Def.'s App. 68. It also indicated that it corrected references to testimony it previously designated in response to topic numbers 6, 10, and 15-19, proposed changes to topic number 21, proposed responses to plaintiffs' revised topics contained in the June 1, 2007 communication, and submitted its second corrected response to plaintiffs' RCFC 30(b)(6) USDA deposition topics. Id. at 67-107; Def.'s Mot. 5.

On June 28, 2007, plaintiffs responded to defendant and cited "additional errors" in defendant's designations. Def.'s App. 108. Plaintiffs also enclosed their revised RCFC 30(b)(6) USDA notice "to capture in one document the changes that have been made to the original notice" and to further clarify and narrow the scope of disputed topics. Id. at 109. Plaintiffs proposed a solution to the parties' dispute:

> If Drs. Detwiler, Hall, [Richard] Race, Rubenstein, Smith, and Zeilenga are the most appropriate witnesses that the USDA has on these topics, then their entire deposition testimony should be attributed to the USDA. By designating the entirety of these witnesses' deposition testimony to Topic ## 2, 4, 5, 9, 11, 12, 13, 14, and 20, plaintiffs will no longer require a designee for these topics and will forego a designee on Topic ## 7 and 8. If the Government is not willing to agree to designate the testimony requested, then plaintiffs will require a designee(s) from the USDA on the eleven remaining topics (Topic ## 2, 4, 5, 7, 8, 9, 11, 12, 13, 14, and 20).

Id. at 111. Plaintiffs also expressed their concern that defendant's "further delay in refusing to identify and produce a designee(s) prejudices [plaintiffs] and borders on obstructionism." Id. at 115.

Defendant responded to plaintiffs' proposal on July 24, 2007. In its response, defendant stated, among other things, that it revised its responses to topic numbers 4, 12, and 14 "to provide a context for the deposition testimony you requested us to include," id. at 127; Def.'s Mot. 7 (stating that defendant "accepted plaintiffs' proposal with respect to topics numbered 4, 12, and

14"), but it declined plaintiffs' proposal to designate the entirety of the depositions of Drs. Detwiler, Hall, Race, Rubenstein, Smith, and Zeilenga as responsive to topic numbers 2, 4-5, 9, 11-14, and 20 because "either your colleague or you asked the witness questions about issues for which (1) they were not the most knowledgeable person to provide testimony, and (2) they had not prepared to testify at the deposition,"[6] Def.'s App. 127.  On July 27, 2007, plaintiffs accepted defendant's additional designations for topic number 4 subject to a correction, confirmed acceptance of defendant's revised designations for topic numbers 6, 10, and 15-19 as sufficient, reiterated their objection to "cherry-pick[ed] prior testimony that favors the USDA from depositions of witnesses it failed to designate as 30(b)(6) deponents," and renewed their request that defendant either designate the entirety of the Detwiler, Hall, Race, Rubenstein, Smith, and Zeilenga depositions or designate witnesses to address the relevant RCFC 30(b)(6) USDA topics. Id. at 163.

The parties' efforts to resolve their dispute without further court intervention proved unsuccessful.  At the time defendant filed its motion, plaintiffs had conducted twelve fact and expert depositions, which included defendant's responses to plaintiffs' RCFC 30(b)(6) NVSL notice and plaintiffs' RCFC 30(b)(6) USDA topic number 3.[7]  Def.'s Mot. 3.  The parties also scheduled a deposition of an additional government witness, Dr. John Clifford, in response to plaintiffs' USDA Rule 30(b)(6) topic number 21.  Id.  Ultimately, the parties resolved their dispute as to USDA Rule 30(b)(6) topic numbers 5, 7-9, and 13.  J. Status Report 1, Feb. 15, 2008.  As such, the remaining issues before the court concern RCFC 30(b)(6) USDA topic numbers 2-3, 11-12, 14, and 20.

After briefing concluded on the instant motions, plaintiffs filed an amended complaint on January 25, 2008.  On February 8, 2008, the parties filed a joint stipulation for dismissal of Count II of the amended complaint, wherein plaintiffs sought compensation for the quarantines imposed upon their real property.  See Am. Compl. ¶¶ 47-49.  The court dismissed with prejudice Count II of plaintiffs' amended complaint.  See Order 1, Feb. 27, 2008.

Before the court proceeds to the substantive arguments set forth in defendant's motion and plaintiffs' cross-motion to compel, it notes that plaintiffs' allegation that defendant provided

---

[6] Defendant stated that, although it designated "some of the testimony of Dr. Rubenstein as responsive to a few of plaintiffs' Rule 30(b)(6) Revised Deposition topics," it would normally not have done so because Dr. Rubenstein "was not and has never been a federal employee." Def.'s App. 127.

[7] Plaintiffs deposed the following government witnesses: Drs. Detwiler, Hall, O'Rourke, Race, Bradley Reiff, Robert Rohwer, Rubenstein, Smith, Sutton, and Zeilenga; and Messrs. Berger, Axel Meister, and Peter Welkerling.  Def.'s Mot. 3; Def.'s Reply & Opp'n 6 & n.2.  Dr. Hall was proffered in response to plaintiffs' RCFC 30(b)(6) NVSL notice, and Dr. Sutton was defendant's designee for plaintiffs' RCFC 30(b)(6) USDA topic number 3.  Def.'s Mot. 3; Def.'s Reply & Opp'n 6.

no notice that Dr. Detwiler could potentially serve as an RCFC 30(b)(6) designee is both wholly unfounded and disingenuous. See Pls.' Opp'n & Cross-Mot. 8. Dr. Detwiler's deposition, like the depositions of Drs. Rubenstein, Smith, Zeilenga, and Mr. Berger, all occurred prior to February 8, 2007, and February 12, 2007, the dates upon which plaintiffs served their RCFC 30(b)(6) NVSL and RCFC 30(b)(6) USDA notices, respectively. See Def.'s Reply & Opp'n 4 (indicating that these witnesses were deposed between November 15, 2006, and February 7, 2007). While defendant must respond to plaintiffs' RCFC 30(b)(6) notices, it is not required to either exhibit clairvoyance or resort to soothsaying to anticipate such notices. With limited exception, the parties have been unable to cooperate with each other, and each disagreement over the RCFC 30(b)(6) topics discussed below evidences the extent to which their counsel have exacerbated, rather than mitigated, this dispute. See infra Part III. Although it must address this dispute as the parties have presented it, the court believes that the situation in which the parties find themselves could have been wholly avoidable if discovery had been conducted in a more cooperative manner and had not been hampered by opposition at nearly every possible turn.

## II. LEGAL STANDARDS

It is "axiomatic that a trial court has broad discretion to fashion discovery orders[.]" White Mountain Apache Tribe of Ariz. v. United States, 4 Cl. Ct. 575, 583 (1984); see also Florsheim Shoe Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) ("Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court."); Shell Petroleum, Inc. v. United States, 46 Fed. Cl. 583, 585 (2000) ("Trial courts enjoy broad discretion in controlling discovery."). Although discovery rules "are to be accorded a broad and liberal treatment," Hickman v. Taylor, 329 U.S. 495, 507 (1947), the court must, "[i]n deciding either to compel or quash discovery, . . . balance potentially conflicting goals," Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 126 (2007). Thus, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Hickman, 329 U.S. at 507.

### A. RCFC 26(b)

RCFC 26(b)(1) is "the general provision governing the scope of discovery." Sparton Corp. v. United States, 77 Fed. Cl. 10, 21 n.14 (2007). It permits parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." RCFC 26(b)(1). RCFC 26(b) mirrors Rule 26(b) of the Federal Rules of Civil Procedure ("FRCP").[8] Sys. Fuels, Inc. v. United States, 73 Fed. Cl. 206, 215 (2006).

---

[8] "[T]o the extent permitted by this court's jurisdiction," the RCFC "shall be consistent with the FRCP . . . ." RCFC 83(a). Interpretation of RCFC 26 "will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure." RCFC rules committee note (2002); see also Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006)

The 1946 amendment to FRCP 26(b) "ma[de] clear the broad scope of examination," which included

> not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence. The purpose of discovery is to allow a broad search for facts, . . . or any other matters which may aid a party in the preparation or presentation of his case.

FRCP 26 advisory committee note (1946 amendment); see also Int'l Paper Co. v. United States, 36 Fed. Cl. 313, 317 (1996) (citing RCFC 26 and stating that "we are similarly mindful of the generally broad scope of discovery in this court").

FRCP 26(b)(1) was amended in 2000, at which time the advisory committee "introduce[d] a note of caution about the provision . . . ." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2007 (2d ed. 1994). The amendments were "intend[ed for] the parties and the court [to] focus on the actual claims and defenses involved in the action," FRCP 26(b)(1) advisory committee note (2000 amendment), whereas previously parties "were entitled to discovery of any information that was not privileged so long as it was relevant to the 'subject matter involved in the pending action,'" 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.41 (3d ed. 2008) (quoting the 1983 version of FRCP 26(b)(1)). Accordingly, the 2000 amendments "narrowed the scope of party-controlled discovery to matters 'relevant to any party's claim or defense.'" Id. (quoting FRCP 26(b)(1)). While courts would "retain[] authority to order discovery of any matter relevant to the subject matter involved in the action for good cause," the amended rule was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery."[9] FRCP 26(b)(1) advisory

---

(noting that interpretation of an FRCP "informs the Court's analysis" of the corresponding RCFC). The FRCP were amended on December 1, 2007, "as part of the general restyling of the Civil Rules." FRCP 26 advisory committee note (2007 amendment). As those changes were "stylistic only," id., the court relies upon authorities construing the previous version of FRCP 26(b).

[9] Thus, where a party objected that requested discovery

> goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

FRCP 26(b)(1) advisory committee note (2000 amendment). The court's determination of the scope of discovery, when its intervention is sought by the parties, would be made "according to the reasonable needs of the action." Id.

committee note (2000 amendment).  Under the current standard, courts are advised to focus upon the specific claims or defenses when determining the scope of discovery.  See id.  However, "[t]his does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact.  It means that the fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery."  6 Moore et al., supra, ¶ 26.41.

Additionally, a party's right to pretrial discovery is constrained by RCFC 26(b)(2)(C).  Pursuant to this rule, the court is required to limit "[t]he frequency or extent of use of the discovery methods otherwise permitted under these rules" upon a determination that the discovery sought is unreasonably cumulative or duplicative, the requesting party had ample opportunity to obtain the information sought, or the burden or expense of the proposed discovery outweighs its likely benefit.  RCFC 26(b)(2)(C).  The court may act upon its own initiative after reasonable notice or pursuant to a motion under RCFC 26(c).

## B.  RCFC 26(c)

RCFC 26(c) "tempers the breadth of discovery by authorizing the court, for good cause shown, to issue a protective order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  Boston Edison Co. v. United States, 75 Fed. Cl. 557, 561 (2007) (quoting RCFC 26(c)); see also 8 Wright, Miller & Marcus, supra, § 2036 (stating that FRCP 26(c) was adopted "as a safeguard for the protection of parties and witnesses in view of the almost unlimited right of discovery given by Rule 26(b)(1)").  It provides that,

> [u]pon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .[10]

RCFC 26(c) (footnote added).  Such an order "is directed to the broad discretion of the court." St. Matthew Publ'g, Inc. v. United States, 41 Fed. Cl. 142, 145 (1998).

Like its FRCP counterpart, RCFC 26(c) "lists eight kinds of protective orders that may be made," although the court may also "be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule."  8 Wright, Miller & Marcus, supra, § 2036.

---

[10]  The court notes that defendant's motion contains the requisite certification: "The parties have attempted to resolve amicably their disputes concerning the scope of these depositions through negotiation; . . .  However, despite several offers and counter-offers, the parties have been unable to reach agreement upon the remaining 11 deposition topics . . . ." Def.'s Mot. 1-2.

The court may, for example, order, among other things, that (1) the discovery may not be had at all, (2) the discovery may be had only on specified terms and conditions, including a designation of the time or place, (3) the discovery may be had by a method of discovery other than that selected by the party seeking discovery, or (4) certain matters may not be inquired into, or that the scope of the discovery be limited to certain matters.  RCFC 26(c).  Where the court denies a motion for protective order either in whole or in part, it may, "on such terms and conditions as are just, order that any party or other person provide or permit discovery."[11]  Id.

RCFC 26(c) requires that "good cause" be shown for issuance of a protective order.  The burden of demonstrating "good cause" rests with the party seeking to shield itself from discovery.  Capital Props., Inc. v. United States, 49 Fed. Cl. 607, 611 (2001).  In order to establish "good cause," a party must show "that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden."  Sparton Corp. v. United States, 44 Fed. Cl. 557, 561 (1999); see also Forest Prods. Nw., Inc. v. United States, 62 Fed. Cl. 109, 114 (2004) (indicating that good cause is established "by specifically demonstrating that 'disclosure will cause a clearly defined and serious injury'" (quoting Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995))), aff'd, 453 F.3d 1355 (Fed. Cir. 2006).  The "'good cause' requirement is strict. . . .  [T]he party . . . must make a particularized factual showing of the harm that would be sustained if the court did not grant a protective order."  Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv. L. Rev. 427, 433 (1991).  Thus, broad allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order.  Forest Prods. Nw., Inc., 62 Fed. Cl. at 114; see also Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection."); 8 Wright, Miller & Marcus, supra, § 2035 ("[C]ourts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.").

Courts may consider several factors, "which are neither mandatory nor exhaustive," Glenmede Trust Co., 56 F.3d at 483, in their determination of whether to issue a protective order.  These include:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to the public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefiting from the order of

---

[11]  The rule also states that the provisions of RCFC 37(a)(4) apply to the award of expenses incurred in relation to the motion.  RCFC 26(c).  For a discussion of RCFC 37, see infra Part II.C.

confidentiality is a public entity or official; and (7) whether the case involves issue[s] important to the public.

Forest Prods. Nw., Inc., 62 Fed. Cl. at 114 n.9 (citing Glenmede Trust Co., 56 F.3d at 483). The trial court "is best situated to determine what factors are relevant to the dispute . . . ." Glenmede Trust Co., 56 F.3d at 483. Although protective orders "are not exceptional with regard to interrogatories and requests to produce," it is "difficult to show grounds for ordering that discovery not be had when it is a deposition that is sought." 8 Wright, Miller & Marcus, supra, § 2037.

## C. RCFC 37

RCFC 37 addresses the failure to make disclosures or cooperate in discovery and permits sanctions. Subsection (a)(2) pertains to depositions and provides:

> If a . . . corporation or other entity fails to make a designation under RCFC 30(b)(6) or 31(a), . . . the discovering party may move for an order compelling . . . a designation . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

RCFC 37(a)(2)(B). If the court grants the motion or the disclosure or requested discovery is provided after the motion was filed, "the court shall . . . require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion," unless (1) the motion was filed without the moving party first engaging in a good faith effort to obtain discovery without court intervention; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust. RCFC 37(a)(4)(A). "The decision whether to impose discovery sanctions rests within the sound discretion of the trial court." Ingalls Shipbuilding, Inc. v. United States, 857 F.2d 1448, 1450 (Fed. Cir. 1988).

RCFC 37, like its FRCP counterpart, does not specify a time limit for filing a motion to compel. Cabot v. United States, 35 Fed. Cl. 80, 81 (1996); see also Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 396 (N.D. Tex. 2006) (noting that FRCP 37 provides no deadline for the filing of motions to compel discovery). Nonetheless, "[i]f the moving party has unduly delayed, the court may conclude that the motion is untimely." 8A Wright, Miller & Marcus, supra, § 2285. Thus, courts have looked to the deadline for completion of discovery when determining the timeliness of a motion to compel. See Days Inn Worldwide, Inc., 237 F.R.D. at 396-97 (citing cases); Cabot, 35 Fed. Cl. at 81 (rejecting plaintiff's timeliness argument that the motion was brought after discovery closed, based upon plaintiff's prior unwillingness to respond to defendant's requests).

"In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995). Furthermore, the certification must evidence "good faith confer[ment]." RCFC 37(a)(2)(B). Good faith "cannot be shown merely through the perfunctory parroting of statutory language on the certificate to secure court intervention; rather it mandates a genuine attempt to resolve the discovery dispute through non-judicial means." Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D. Nev. 1996). Conferment requires that the moving party "must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id. Although a party may satisfy the requirements of RCFC 37(a), the decision to grant a motion to compel discovery that meets the standards of RCFC 26(b), see supra Part II.A, is, like all questions of discovery, committed to the discretion of the court, see Vons Cos., Inc. v. United States, 51 Fed. Cl. 1, 5 (2001) ("A motion for protective order to limit the scope of discovery, and, contrapuntally, a motion to compel discovery, are both committed to that discretion."), modified by 2001 WL 1555306 (Fed. Cl. Nov. 30, 2001).

## D.  RCFC 30(b)(6)

RCFC 30(b)(6) affords parties the right to serve a deposition notice upon a business or governmental entity. Because it is "not literally possible" to depose a corporation or other entity, 8A Wright, Miller & Marcus, supra, § 2103, the rule states:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.[12]

RCFC 30(b)(6) (footnote added). The rule requires that the deposition notice describe the matters on which examination is requested with "reasonable particularity," RCFC 30(b)(6), and the governmental or business deponent has "an affirmative duty to make available persons who will be able to 'give complete, knowledgeable and binding answers' on its behalf," Dairyland Power Coop. v. United States, 79 Fed. Cl. 709, 714 (2007) (quoting Reilly v. NatWest Mkts.

---

[12] The FRCP counterpart to RCFC 30(b)(6) was added to "reduce the difficulties now encountered in determining . . . whether a particular employee or agent is a 'managing agent'" and to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." FRCP 30(b)(6) advisory committee note (1970 amendment).

Group, Inc., 181 F.3d 253, 268 (2d Cir. 1999)).  The deponent also has "an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are 'known or reasonably available' to the corporation."  King v. Pratt & Whitney, 161 F.R.D. 475, 476 (S.D. Fla. 1995) (quoting FRCP 30(b)(6)), aff'd, 213 F.3d 646 (11th Cir. 2000).  In this regard, RCFC 30(b)(6) "sets a high burden of knowledge, but only regarding the noticed topics, no more and no less."  Payless Shoesource Worldwide, Inc. v. Target Corp., No. 05-4023-JAR, 2008 WL 973118, at *10 (D. Kan. Apr. 8, 2008).

"When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent."  Resolution Trust Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir. 1993).  "In other words, the testimony of the Rule 30(b)(6) designee is deemed to be the testimony of the corporation itself."  State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., No. 03-6516, 2008 WL 1977522, at *7 (E.D. Pa. May 7, 2008).  Thus, RCFC 30(b)(6) "implicitly requires the designated representative to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition.  This interpretation is necessary in order to make the deposition a meaningful one and to prevent . . . a half-hearted inquiry . . . ."  Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., No. 05-2164-MLB-DWB, 2007 WL 1054279, at *3 (D. Kan. Apr. 9, 2007).  If a designee cannot answer questions within the scope of the noticed topics, then the deponent "has failed to comply with its Rule 30(b)(6) obligations . . . ."  King, 161 F.R.D. at 476; see also Resolution Trust Corp., 985 F.2d at 197 ("If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.")

The preparation required for an RCFC 30(b)(6) deposition RCFC 30(b)(6) "can be burdensome."  Heartland Surgical Specialty Hosp., 2007 WL 1054279, at *3.  Indeed, courts have recognized that the rule "imposes burdens on both the discovering party and the designating party" because the former must describe the matters on which testimony is sought with reasonable particularly, while the latter must produce at least one designee with knowledge about the subject matter contained in the deposition notice.  Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., No. 2:06-CV-00911-BES-PAL, 2008 WL 818947, at *3 (D. Nev. Mar. 24, 2008).  However, "the burden upon such a responding entity is justified since a corporation can act only through its employees."  ICE Corp. v. Hamilton Sundstrand Corp., No. 05-4135-JAR, 2007 WL 1732369, at *4 (D. Kan. June 11, 2007); see also Heartland Surgical Specialty Hosp., 2007 WL 1054279, at *3 (stating that the burden "is merely the result of the concomitant obligation from the privilege of being able to use the corporate (or other organizational) form in order to conduct business").  One court has opined that this burden can be lessened through the designation of a single witness, Khoa Hoang v. Trident Seafoods Corp., No. C06-1158 RSL, 2007 WL 2138780, at *1 (W.D. Wash. July 23, 2007).

In some circumstances, an RCFC 30(b)(6) designee may also be deposed in his or her individual capacity.  Because "methods of discovery may be used in any sequence," RCFC 26(d), a witness may be deposed either prior to or following his or her testimony as an RCFC 30(b)(6)

designee.  Although RCFC 30(b)(6) and individual depositions are similar, they have an important distinguishing feature.  Testimony obtained during the former "represents the knowledge of the corporation, not of the individual deponents."  United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.), aff'd, 166 F.R.D. 367 (M.D.N.C. 1996); see also id. (explaining that a Rule 30(b)(6) designee "does not give his personal opinions," but instead "presents the corporation's 'position' on the topic").  Testimony obtained during the latter is limited by "memory [that] is no more extensive than [the deponent's] life."  Id.  Unlike an individual, an entity "has a life beyond that of mortals."  Id.  As such, it has a "duty to present and prepare a Rule 30(b)(6) designee . . . beyond matters personally known to that designee or to matters in which that designee was personally involved," Alloc, Inc. v. Unilin Decor N.V., Nos. 02-C-1266, 03-C-342, 04-C-121, 2006 WL 2527656, at *2 (E.D. Wis. Aug. 29, 2006).  Due to this "qualitative difference in the testimony that one witness may give as an individual and as a Rule 30(b)(6) deponent," id., "just because [plaintiff] may choose to designate certain individual[s] as its corporate designees whose fact depositions have already occurred does not insulate [plaintiff] from the requirements of Rule 30(b)(6).  Such a finding would eviscerate Rule 30(b)(6)," ICE Corp., 2007 WL 1732369, at *3 (alterations in original).  Therefore, prior deposition testimony by a witness in his or her individual capacity does not preclude an RCFC 30(b)(6) deposition of the same witness, or vice versa.  See LendingTree, Inc. v. LowerMyBills, Inc., No. 3:05CV153-C, 2006 WL 2443685, at *2 (W.D.N.C. Aug. 22, 2006) ("Although there is no binding case authority on point, . . . there is no prohibition on deposing a witness in both individual and corporate capacities.").

### III.  DISCUSSION

    In this case, discovery did not close until February 29, 2008.  See J. Status Report 1, Feb. 15, 2008.  Although plaintiffs' cross-motion to compel was timely, the court notes that plaintiffs did not file the necessary certification, as required by RCFC 37(a)(2)(B).  Nevertheless, under the present circumstances, the court finds that such a deficiency is harmless because both plaintiffs' cross-motion to compel and the negotiations that continued through February 2008 clearly evidence the parties' attempts to engage in "good faith confer[ment]."  RCFC 37(a)(2)(B).  For example, plaintiffs detail throughout their cross-motion to compel the parties' efforts to resolve their dispute.  See Pls.' Opp'n & Cross-Mot. 5-16.  Moreover, plaintiffs supplemented their cross-motion to compel and reply with appendices exceeding 130 pages.  While some courts have denied motions to compel because the moving party failed to comply with either FRCP 37, see, e.g., Kelly v. MBNA Am. Bank, No. CIV.A.06-228 JJF, 2006 WL 2993268, *2 (D. Del. Oct. 20, 2006) ("Plaintiff does not comply with the requisites of Rule 37(a) inasmuch as it does not contain a certification that Plaintiff in good faith conferred or attempted to confer . . . to secure discovery without court action.  Therefore, the motion will be denied."), or FRCP 37 and a corresponding local rule, see, e.g., Pinkham v. Gen. Prods. Corp., No. 1:07-CV-174, 2007 WL 4285376, at *1 (N.D. Ind. Dec. 3, 2007) ("Here, it is immediately apparent that the Defendant's motion should be denied because no good faith 'certification' was filed, as Local Rule 37.1 informs the term."), other courts have proceeded to the merits of the underlying motion despite the absence of a Rule 37 certification, see, e.g., Harmon v. City of Southaven, Miss., No.

2:06cv183-P-A, 2008 WL 1821467, at *1 n.1 (N.D. Miss. Apr. 22, 2008) (stating that, because plaintiff's motion to compel was not accompanied by a good faith certification as required by local rule 37.1, "[u]nder normal circumstances, this motion would be denied on the basis of this omission," but ultimately reaching the merits of the motion because the court was unaware of the absence of the certification until after briefing had been completed); Vigilant Ins. v. E. Greenwich Oil Co., 234 F.R.D. 20, 24-26 (D.R.I. 2006) (determining that "[b]oth [plaintiff's] failure to respond to the two discovery requests and [defendant's] failure to include a certification must be considered in crafting an appropriate sanction for the violations," denying defendant's motion to exclude expert damages testimony but imposing sanctions that "minimize[] the prejudice facing [defendant] and deal[] comprehensively with [plaintiff's] discovery digressions," and ordering that plaintiff's counsel bear defendant's costs in bringing its motion); Travelers Cas. & Sur. Co. of Am. v. Gelbrich, No. A04-0165CV(RRB), 2005 WL 1958418, at *2 (D. Alaska Aug. 12, 2005) (considering the merits of and ultimately granting defendant's motion to compel, with an award of partial fees, despite the fact that defendant did not file the requisite good faith certificate with its motion, as required by local rule 37.1, and that defendant "attempted to cure its failure to do so and resolve the present discovery matter in good faith, but to no avail"). Based upon the facts presented in this case, the court believes the latter approach is appropriate here. Accordingly, the court is satisfied that plaintiffs conferred with defendant in good faith despite the absence of an express certification in their cross-motion to compel. See supra Part I.C; see also J. Status Report 1, Feb. 15, 2008 (stating that the parties reached agreement as to five of the eleven disputed topics that are the subject of the instant motions).

In its motion, defendant requests that the court enter a protective order precluding plaintiffs from taking additional deposition testimony concerning revised RCFC 30(b)(6) USDA topic numbers 2-3, 11-12, 14, and 20. Def.'s Mot. 39. Plaintiffs contend that defendant "has completely manipulated the RCFC 30(b)(6) process." Pls.' Opp'n & Cross-Mot. 16. They allege that defendant, "in contravention of the appropriate and customary method of identifying and producing a live designee(s) in response to a deposition notice issued pursuant to Rule 30(b)(6)," seeks a protective order in an attempt to "bar[] plaintiffs from obtaining an RCFC 30(b)(6) deposition from the USDA on certain topics and, for others, seeks to designate testimony of certain fact and proposed expert witnesses who were deposed in their individual capacities." Id. at 1. Defendant argues that plaintiffs' proposed resolution of this dispute, namely designating the entirety of certain individuals' depositions,

> would have the effect of over-designating certain testimony as attributable to the Government under Rule 30(b)(6). Because the witness's testimony on each and every topic[] was not necessarily the position of the agency, it would be misleading to identify all of the deposition testimony . . . as Rule 30(b)(6) testimony.

Def.'s Reply & Opp'n 30. Plaintiffs further maintain that defendant "knew the specific topics for which plaintiffs had requested a designee since receiving Plaintiffs' Rule 30(b)(6) Notice of

Deposition of the USDA on February 12, 2007," but instead "sat back and allowed the depositions of the individuals from whose depositions it now wants to designate testimony to be scheduled" in order to avoid responding to plaintiffs' RCFC 30(b)(6) requests. Pls.' Opp'n & Cross-Mot. 1. Plaintiffs claim that they "have gone above and beyond their RCFC 30(b)(6) duties, trying repeatedly to schedule USDA 30(b)(6) deposition(s), and accepting the Government's retroactively-selected testimony for . . . topics that are not at issue." Pls.' Reply 2 (citation omitted).

Plaintiffs request that the court order defendant to produce an appropriate designee or designee to address the disputed topics. Pls.' Opp'n & Cross-Mot. 48. Alternatively, plaintiffs request that the court order defendant to designate the entirety of certain individuals' depositions as responsive to these topics. Id. In the event that the court declines either of these options, plaintiffs request that the court permit them to depose certain decision-makers from the USDA "so the plaintiffs can gather the evidence which the RCFC 30(b)(6) process initially was intended to obtain." Id. Plaintiffs emphasize that, although they "have no interest in duplicating work, having already accepted the Government's selections of prior testimony as that of the USDA on certain topics," they are entitled to additional testimony for topics that defendant's designees "did not fully address" or where "there exists no record evidence." Pls.' Reply 4; see also id. at 3 n.5 (questioning whether plaintiffs actually deposed the primary witnesses who are capable of explaining agency action).

## A. Plaintiffs' Revised RCFC 30(b)(6) USDA Topic Number 2

In topic number 2, plaintiffs seek testimony from a designee concerning "[d]ocuments relating to the decision to permit the Faillaces to import live sheep from Belgium in 1996."[13] Def.'s App. 121. According to defendant, a large proportion of these documents "appear to be applications to import sheep prepared by plaintiffs or plaintiffs' agents," while the remaining

---

[13]   Plaintiffs cite specific documents, indicated by Bates numbers, in their revised topic number 2. See Def.'s App. 121. Plaintiffs' previous version of topic number 2, which did not identify specific documents, sought a designee who could testify regarding

> [t]he USDA's decision permitting the Faillaces to import live sheep in 1996 from Belgium, including but not limited to the timing of that decision, the parties involved in that decision, the basis for that decision, any communication about that decision, and any documents or other information relied upon in making that decision.

Id. at 18. In response to defendant's contention that topic number 2 was overly broad, plaintiffs "narrowed" topic number 2 "[i]n an attempt to reduce the scope of the deposition topic[] even further." Id. at 64. Plaintiffs emphasize that they "specifically deleted the reference 'including but not limited to' in order to make the limitations of the topic clear." Pls.' Opp'n & Cross-Mot. 45 n.24.

documents "include USDA regulations that govern the importation of sheep and other small ruminants . . . and documents that were generated by USDA officials . . . who otherwise have no knowledge of the facts that are at issue in this case . . . ." Def.'s Mot. 12. Defendant argues that topic number 2 is irrelevant to a determination of "whether (1) [the] USDA violated plaintiffs' right to receive fair compensation under the Fifth Amendment when the USDA seized plaintiffs' sheep and quarantined a portion of their premises for five years, or (2) [the] USDA violated plaintiffs' right to receive fair market value for the sheep seized . . . ." Id. at 12-13. According to defendant,

> [a]ll of the parties have conceded that the sheep that were seized from the Faillace and Freeman premises were imported or descended from sheep that were imported from either Belgium or the Netherlands. Moreover, the parties agree that, as of mid-July 1996, there was concern expressed by members of the scientific community in Europe that bovine spongiform encephalopathy (BSE) had spread from England to the Netherlands and Belgium and that meat and bonemeal contaminated with BSE had been fed to the livestock population in those countries.

Def.'s App. 68.

While defendant acknowledges that the documents referenced in topic number 2 "discuss the status of the health of the sheep," Def.'s Mot. 13, it nonetheless maintains that "the import documents which the plaintiffs would like to use during their USDA Rule 30(b)(6) deposition have no bearing upon the question of whether plaintiffs' sheep were or were not infected with a transmissible spongiform encephalopathy (TSE) of foreign origin," Def.'s Reply & Opp'n 10; accord id. ("[T]he importation documents have no bearing upon whether plaintiffs' sheep were infected with a TSE of foreign origin."); Def.'s App. 76 (raising relevancy objections to topic number 2 in defendant's Second Corrected Response to Plaintiffs' Rule 30(b)(6) Notice of Deposition of the United States Department of Agriculture). In fact, according to defendant, "[g]iven the relatively long incubation periods for TSE and the lack of definitive information about how [TSEs] in sheep are spread, the scrapie status of plaintiffs' sheep has no bearing upon whether plaintiffs' sheep were at risk to develop a TSE other than scrapie." Def.'s Reply & Opp'n 10 (citation omitted). Accordingly, defendant believes that its relevancy objection warrants issuance of a protective order precluding plaintiffs from obtaining testimony on this topic. Def.'s Mot. 13.

Alternatively, defendant argues that, even if the court determines that topic number 2 is relevant, a protective order is appropriate for three reasons. First, defendant maintains that topic number 2 is overly broad because it identifies some, but not all, documents upon which a designee would be required to testify.[14] Id. Second, defendant interprets topic number 2 to

_____

[14] Defendant states, however, that plaintiffs "concede [that] they will not require . . . [testimony] about any documents other than those identified in topic number 2." Def.'s Reply &

require government witnesses to "shed light upon documents which the plaintiffs, their agents, or agents of a foreign government prepared," which, according to defendant, contravenes the purpose of an RCFC 30(b)(6) designee, who is only required to testify as to matters known or reasonable available to the organization. Id. at 13-14. Finally, defendant argues that topic number 2 is unduly burdensome because it identifies a significant number of documents that "were generated by USDA officials, such as importation officials, who otherwise have no knowledge of the facts in this case" and would require "[l]ocating such individuals or educating USDA witnesses regarding such documents." Id. at 14. As a result, defendant asserts that plaintiffs "do not explain how Government witnesses can be expected to testify about the information contained in documents that were prepared by plaintiffs' witnesses or by officials from foreign countries," Def.'s Reply & Opp'n 10, and "offer no explanation as to how the Government could possibly prepare its witness to testify concerning documents about which it has no knowledge,"[15] id. at 11.

Plaintiffs respond that topic number 2 is relevant because it proves that their sheep were free of a TSE at the time of their importation.[16] Pls.' Opp'n & Cross-Mot. 44; Pls.' Reply 12-13 ("[Topic number 2] bears directly on whether plaintiffs' sheep carried a 'foreign' disease into the United States and demonstrates the foreign certifications that showed that plaintiffs' sheep were free of a TSE"). Plaintiffs argue that testimony about "specific documents relating to the USDA's decision to permit the Faillaces to import live sheep from Belgium in 1996" is necessary in order to "authenticate and to question a USDA witness about certain USDA import protocols." Pls.' Opp'n & Cross-Mot. 44. According to plaintiffs, these protocols "required confirmation that plaintiffs' sheep had no contact with any herd where scrapie disease had been diagnosed or suspected during the previous sixty months." Id.; see also Def.'s App. 165-233 (containing various applications for import, quarantine reservation forms, laboratory reports, health certificates, and United States rules and regulations concerning importation of sheep generally as well as importation specifically from Belgium). Plaintiffs seek testimony concerning the

---

Opp'n 10.

   [15] Defendant further states that it "does not have any way to prepare itself about a number of the documents . . . because they were prepared by the plaintiffs themselves or by officials from Belgium or the Netherlands." Def.'s Reply & Opp'n 10-11 (citation omitted); see also id. at 11 ("[G]iven the vast array of documents that come from a number of different sources, the task of preparing one or more witnesses to testify concerning the variety of documents plaintiffs have identified will be extremely burdensome.").

   [16] Topic number 2 is also relevant, plaintiffs claim, because "the scrapie-status of the sheep goes directly to whether former 21 U.S.C. § 134a and the supposed 'other regulations' on which the Government relied are applicable . . . . Further, the scrapie-status of the sheep bears on whether the Government can assert a nuisance defense based on any allegedly foreign 'disease.'" Pls.' Reply 13.

USDA's examination of these health certificates certifying that plaintiffs' sheep had no contact with scrapie within the sixty months prior to importation because "[t]he fact that the Government had in its possession documents certifying that the sheep did not have scrapie when they entered the United States makes it far less likely that plaintiffs' sheep carried a TSE into this country." Pls.' Opp'n & Cross-Mot. 45; see also Pls.' Reply 13 ("[T]he Government cannot deny that these documents do involve whether plaintiffs' sheep were infected with scrapie, which was at the time the only TSE believed naturally to infect sheep"). The documents encompassed by topic number 2, plaintiffs argue, "[n]ot only . . . raise the question of where plaintiffs' sheep allegedly contracted this 'foreign' disease, they make it less likely that the sheep had scrapie . . . ." Pls.' Opp'n & Cross-Mot. 45; see also Def.'s App. 72 (stating defendant's position that "plaintiffs' assumption that [the] USDA has ruled out the possibility that the disease with which plaintiffs' sheep were infected was not scrapie or BSE is incorrect"). Plaintiffs maintain that they should be permitted to disprove defendant's claim that the sheep were possibly infected by scrapie. Pls.' Opp'n & Cross-Mot. 45.

In response to defendant's alternative arguments, plaintiffs first emphasize that they revised topic number 2 such that it cannot be construed as overly broad. See supra notes 13-14; see also Pls.' Reply 13 n.12 (indicating that topic number 2 requests a designee "to address less than 30 documents"). Next, with respect to defendant's arguments that plaintiffs, plaintiffs' agents, or agents of a foreign government prepared most of the documents at issue, plaintiffs argue that "the preparer of the documents is of no consequence in designating a[n] RCFC 30(b)(6) witness." Pls.' Opp'n & Cross-Mot. 45 n.24 (citing Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 38 (D. Mass. 2001) (rejecting arguments that witnesses could not testify on the grounds that tax returns were prepared by professional accountants because the witnesses "were still required to review all documentation and to educate themselves to the extent possible on all of the 30(b)(6) topics")). Additionally, plaintiffs note that defendant "reviewed and relied on the health certificates when it permitted the sheep to be imported, and the protocols were negotiated and followed by the USDA itself." Pls.' Reply 13 (citations omitted). Finally, as to defendant's argument that the documents were generated by USDA officials "who otherwise have no knowledge of the facts in this case" and that "[l]ocating such individuals or educating USDA witnesses regarding such documents would be unduly burdensome," Def.'s Mot. 14, plaintiffs assert that defendant is "incorrect[]," Pls.' Opp'n & Cross-Mot. 45 n.24. According to plaintiffs, defendant's designee need only have knowledge of the subject matter of the topic for which the witness is designated, rather than any personal knowledge of any facts of the case. Id. (citing ICE Corp., 2007 WL 1732369, at *4 (stating that a party may not undermine the purpose of FRCP 30(b)(6) "by responding that no witness is available who personally has knowledge concerning the areas of inquiry")).

The court is not persuaded by defendant's relevancy objections. "Where there is doubt over relevance, [FRCP 26(b)(1)] indicates that the court should be permissive." Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1023 (Fed. Cir. 1986) (citing Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 566 (7th Cir. 1984)). The court finds that topic number 2 is relevant insofar as plaintiffs seek to disprove the belief held by defendant that plaintiffs' sheep

had scrapie, see Def.'s App. 72, and to determine whether former section 134a and "other regulations" are applicable to plaintiffs' sheep, see Pls.' Reply 13.  Additionally, topic number 2 implicates whether defendant can maintain a nuisance defense.  See id.; supra note 16.  Furthermore, plaintiffs assert that evidence accumulated during discovery suggests that defendant slaughtered plaintiffs' sheep for policy reasons in order to "maintain[] the perception that the United States was free of Bovine Spongiform Encephalopathy . . . ."  Pls.' Opp'n & Cross-Mot. 4.  Given that topic number 2 will help develop their theory of the case and is related to defendant's nuisance defense, plaintiffs are entitled to obtain the discovery they seek.

The next inquiry is whether defendant is entitled to a protective order; the court determines that defendant has not demonstrated that requiring it to provide testimony concerning topic number 2 is "likely to oppress" or will "impose an undue burden."  Sparton Corp., 44 Fed. Cl. at 561.  First, contrary to defendant's interpretation, the court does not construe topic number 2 as overly broad.  Rather, it specifically enumerates a finite set of documents about which the government can readily prepare a witness to testify.  See Pls.' Reply 13 n.12 (stating that topic number 2 "is well within the Government's capability to prepare a witness" for testimony).  Additionally, plaintiffs have agreed not to seek testimony concerning any document not identified in topic number 2.  Def.'s Reply & Opp'n 10; supra note 14.  The court shall hold plaintiffs to their promise.

Second, the court is unpersuaded by defendant's broad allegation that it has no way to prepare a witness to testify about the documents identified within topic number 2.  As to defendant's contention that it is only required to produce a witness who can testify as to matters reasonably known to the organization and not matters stemming from this litigation, the court notes that RCFC 30(b)(6) does not require that defendant produce a witness "with the greatest knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding" on it.  Rodriguez v. Pataki, 293 F. Supp. 2d 305, 311 (S.D.N.Y.), aff'd, 293 F. Supp. 2d 315 (S.D.N.Y. 2003).  Moreover, as the Fabiano Shoe Co. court recognized, the obligation imposed by Rule 30(b)(6) is "not infinite."  201 F.R.D. at 38.  Where a witness reviews available documentation "and still would not have been able to give complete answers . . . and there were no other available witnesses who could do so," the Fabiano Shoe Co. court reasoned that an organization's obligations under Rule 30(b)(6) "cease, since the rule requires testimony only as to 'matters known or reasonably available to the organization.'"  201 F.R.D. at 38 (quoting Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 76 (D. Neb. 1995)).  Defendant satisfies its obligation only by adequately preparing and providing a knowledgeable witness whose testimony concerns matters known or reasonably available to the government.

Defendant may not insulate itself from providing responsive testimony concerning topic number 2.  Accordingly, the court denies defendant's motion as it relates to topic number 2 and grants plaintiffs' cross-motion to compel an appropriate designee who can testify as to the matters contained–and documents specifically identified–in topic number 2.

### B.  Plaintiffs' Revised RCFC 30(b)(6) USDA Topic Number 3

Plaintiffs' topic number 3 seeks testimony concerning the following:

Information relating to the USDA's scrapie regulatory programs, as addressed in
Sections 54.1 and 54.2 and Subpart A of Title 9 of the Code of Federal
Regulations ("CFR") and Part 79 of the same; the Voluntary Scrapie Flock
Certification Program ("VSFCP"), and Part IX of the Scrapie Eradication Uniform
Methods and Rules ("SEUMR"), as applicable, regarding (a) the diagnosis of
sheep and/or sheep flocks with scrapie or any other type of Transmissible
Spongiform Encephalopathy ("TSE") from 1998-2004; (b) the identification and
categorization of sheep and sheep flocks (e.g., suspect animal, suspect flock,
exposed animal, exposed flock, high-risk animal, infected flock, scrapie-positive
animal, scrapie suspect) from 1998-2004; (c) laboratory and testing procedures
and interpretation from 1998-2004; (d) the USDA's coordination with the State of
Vermont as related to an outbreak of scrapie or any other type of TSE in sheep
and/or sheep flocks in 1998-April 2001; (e) the procedure for how sheep and
sheep flocks were selected for culling based upon a diagnosis of scrapie or any
other type of TSE from 2000-April 2001; and (f) the process for quarantining
sheep and the property on which they were kept upon the diagnosis of scrapie or
any other type of TSE in sheep and the process for re-evaluating the necessity of
such quarantines from 2000-2004.  The USDA's designee would also confirm that
the aforementioned regulations and programs do not relate to the agency's
response to the diagnosis of any TSE in sheep besides scrapie.

Def.'s App. 121.  Both parties indicate that they "extensively negotiated the scope of topic
number 3" prior to the June 27, 2007 deposition of Dr. Sutton.  Def.'s Mot. 37; see also Def.'s
Reply & Opp'n 21 n.9 ("We note that topic number 3 was 'heavily negotiated[.]'"); Pls.' Opp'n
& Cross-Mot. 40 ("Prior to Dr. Sutton's deposition on June 27, 2007, the parties heavily
negotiated the . . . language of Topic # 3 . . . .").  According to plaintiffs, the underlying dispute
over topic number 3 concerns the fact that the topic "was based entirely on the proposition that
the Government would confirm that there were no regulations applicable to transmissible
spongiform encephalopathies ("TSEs") in sheep other than the scrapie regulations about which
Dr. Diane Sutton was put forward to testify."  Pls.' Reply 16-17.  The phrase "scrapie or any
other type of [TSE]" lies at the center of the dispute.

Plaintiffs state that this phrase was included "based upon [counsel's] understanding that
the Government would confirm that there were no applicable regulations relating to how the
Government dealt with sheep diagnosed with a TSE, other than those regulations used for
scrapie."  Pls.' Opp'n & Cross-Mot. 40; accord id. (indicating that plaintiffs included the phrase
"scrapie or any other type of [TSE]" in order to "signify the fact that no other regulations applied
to the diagnosis of TSEs in sheep"); Def.'s App. 551 ("[P]laintiffs originally included the phrase
'or any other type of TSE in sheep' . . . with the understanding that there were no other

applicable regulations relating to the diagnosis (or other associated event) of a TSE in sheep other than those identified in the topic."). According to plaintiffs, defendant "refused to confirm that there were no other regulations relating to how the Government dealt with sheep diagnosed with a TSE other than scrapie, so the phrase remained."[17] Pls.' Opp'n & Cross-Mot. 40; Pls.' App. 56-59; accord Def.'s App. 551 (stating that plaintiffs' counsel "learned from [defendant's counsel] that the USDA considered other regulations applicable to the diagnosis (or other associated event) of a TSE in sheep and presumably my clients' sheep. I asked you to identify what those regulations were, but you refused to do so"). Consequently, plaintiffs argue that they "do not have USDA testimony on the other regulations upon which the USDA purportedly relied in seizing plaintiffs' sheep." Pls.' Reply 17.

Defendant maintains that Dr. Sutton's testimony fully satisfied topic number 3. Def.'s Mot. 38; Def.'s Reply & Opp'n 20. According to defendant, Dr. Sutton "was fully prepared to testify and answered all of plaintiffs' questions that were within the scope of topic number 3," Def.'s Reply & Opp'n 20-21, and that this issue is before the court "because of plaintiffs' failure to articulate the testimony they sought by way of topic number 3," id. at 21 n.9. Defendant notes that prior to Dr. Sutton's deposition, it stated its position concerning the scope of topic number 3. See Def.'s Reply & Opp'n 22-24. On June 26, 2007, defendant's counsel wrote to plaintiffs' counsel:

---

[17] Defendant states that its counsel

> explained to plaintiffs' counsel that the scrapie regulations and programs that were the subject of topic number 3 do not apply to TSE[s] other than scrapie, and he requested that plaintiffs' counsel remove that phrase from the notice. Plaintiffs' counsel initially declined to remove the phrase, explaining that plaintiffs desired confirmation that the scrapie regulations and programs do not apply to TSE[s] other than scrapie.

Def.'s Reply & Opp'n 22. Defendant further indicates that its counsel "expressed concern that topic number 3, as it then existed, implied that the scrapie regulations did[,] in fact[,] apply to TSE[s] other than scrapie, but acknowledged that plaintiffs had a legitimate need for the confirmation they sought and suggested that the request be stated more clearly." Id. at 22-23. Although both parties agreed that the phrase "or any other type of TSE" be removed, defendant contends that plaintiffs failed to comply with that agreement. Id. at 23 & n.10; see also id. at 23-24 (describing plaintiffs' belief that they were entitled to testimony "regarding the body of regulations that are applicable to TSE['s] other than scrapie"). But see Def.'s App. 551 (emphasizing that, because plaintiffs' counsel first learned that the USDA considered other regulations applicable to the diagnosis of a TSE in sheep, plaintiffs "could not remove the phrase 'or any other type of TSE in sheep' from Topic #3 as you had requested"; expressing that plaintiffs "did not renege on any agreement"; and indicating that the parties' "arrangement was based on a misunderstanding of fact and was subject to confirmation that you could not and would not provide").

> [I]n our view, Topic Number 3 does not request information about the regulations that are applicable to the diagnosis and USDA response to an outbreak of transmissible spongiform encephelopathies ("TSEs") other than scrapie . . . . Rather, the categories containing the language 'or TSEs other than scrapie' seek, in part, information about the applicability of the regulations and portions of program documents identified in Topic Number 3 . . . to TSEs other than scrapie. Dr. Sutton will provide this information. The aforementioned categories in Topic Number 3 do not, however, seek information regarding the regulations that apply to the diagnosis of TSEs other than scrapie or the regulations that apply in the event of an outbreak of a TSE other than scrapie. The Government, therefore, does not designate Dr. Sutton to testify regarding the regulations that apply to the diagnosis of TSEs other than scrapie or the regulations that apply in the event of an outbreak of a TSE other than scrapie.

Def.'s App. 549-50; accord Def.'s Reply & Opp'n 24 ("The Government . . . indicated that it would designate Dr. Sutton to testify in response to topic number 3, but further indicated that Dr. Sutton would not testify regarding the regulations applicable to TSE[s] other than scrapie because such testimony would not be within the scope of topic number 3."). "It was pursuant to this understanding," defendant states, "that Dr. Sutton's deposition took place on June 27, 2007. Def.'s Reply & Opp'n 24; accord Pls.' Opp'n & Cross-Mot 41 ("Dr. Sutton's deposition proceeded the next day with that understanding."); see also Def.'s App. 551 ("[P]laintiffs accept that Dr. Sutton is being designated to testify only with regards to the items identified in Topic #3 as they relate to scrapie. However, we do not consider the Government to have satisfied its obligation . . . .").

Defendant notes that, contrary to any assertion by plaintiffs that Dr. Sutton "'only provided testimony about the regulatory scheme as it related to scrapie,'" and not to "'any other type of TSE,'" Def.'s Reply & Opp'n 25 (quoting Pls.' Opp'n & Cross-Mot. 40), Dr. Sutton "provided several hours of testimony regarding every aspect of the applicability of the scrapie regulations," id. at 24; cf. Pls.' Reply 17 ("The parties do not dispute that Dr. Sutton only was designated regarding the regulations applicable to scrapie, both classical and atypical scrapie[.]"). Specifically, defendant emphasizes that Dr. Sutton testified that the scrapie regulations: (1) do not relate to the diagnosis of any TSE in sheep other than scrapie, see Def.'s App. 554 (Sutton Dep. 53:16-20, June 27, 2007); id. at 557 (Sutton Dep. 61:13-18); (2) do not relate to BSE in sheep, see id. at 554-55 (Sutton Dep. 53:21-54:1); and (3) apply upon a diagnosis by the NVSL that an animal is scrapie positive, see id. at 555-56 (Sutton Dep. 54:2-55:10); id. at 558-61 (Sutton Dep. 183:2-186:1). Additionally, defendant notes that Dr. Sutton testified that: (1) if the NVSL does not identify an animal as scrapie positive, then the scrapie regulations do not apply, see id. at 556 (Sutton Dep. 55:11-14); (2) section 71 of title 9 of the CFR grants the USDA general authority to act in response to communicable diseases, see id. (Sutton Dep. 55:4-11); and (3) the USDA's authority to respond to the outbreak of diseases other than scrapie is derived from broad regulatory authority to act upon an outbreak of a communicable disease in livestock, see id. at 562-63 (Sutton Dep. 224:9-225:11). Consequently, defendant asserts that plaintiffs

"have not identified a single question that Dr. Sutton did not answer on this topic" and "fail[] to explain why they believe the Government's designation of Dr. Sutton in response to topic number 3 was not adequate."  Def.'s Reply & Opp'n 25.  Finally, defendant emphasizes that while plaintiffs apparently seek information regarding the regulations that were applied to their sheep and maintain that "the Government is 'refusing to provide this information,'" id. at 26 (quoting Pls.' Opp'n & Cross-Mot. 26), such information was not sought by the language of topic number 3, which "does not contain any reference to plaintiffs' sheep at all," id.

Plaintiffs maintain that defendant has not fulfilled its obligation to designate a witness as to the entirety of topic number 3 because it "also covers additional regulations, i.e., regulations applicable to TSEs in sheep other than scrapie."  Pls.' Reply 17.  Prior to Dr. Sutton's testimony, plaintiffs stated:

> The USDA maintains that plaintiffs' sheep were diagnosed with an "atypical TSE of foreign origin."  That disease does not exist and has never before existed. Plaintiffs are entitled to understand the regulatory (or non-regulatory . . . ) framework that the Government utilized in assessing how to address the situation involving Plaintiffs' sheep.  The Government contends that the scrapie regulations were inapplicable, yet at the same time it avers that it did not make a determination that plaintiffs' sheep did not have scrapie.  This position is entirely inconsistent.  If the USDA's contention is that this supposed "disease" is a generic name assigned to a specific TSE for which the Government did not and/or could not identify, then plaintiffs are entitled to understand what regulations were applicable to the outbreak of this alleged "disease" and what other regulations would apply to the diagnosis (or other associated event) of a TSE in sheep besides scrapie.  By refusing to disclose this information, [defendant is] setting up plaintiffs for a trial by ambush.

Def.'s App. 551.  Plaintiffs highlight portions of Dr. Sutton's testimony in which she testified that, although scrapie regulations applied to classical scrapie and atypical scrapie in sheep, see Pls.' App. 116-17 (Sutton Dep. 119:20-120:9), these applications did not apply to plaintiffs' sheep because the USDA made no affirmative determination that plaintiffs' sheep suffered from either disease, see id. at 118 (Sutton Dep. 236:8-18); see also Pls.' Reply 17 ("The Government now claims that . . . it did not rely on the scrapie regulations for the authority to issue the Declaration of Extraordinary Emergency, but rather some other source.").  Plaintiffs state that they "seek–as we always have sought–a designee who can explain what regulations were applied to plaintiffs' sheep and why such regulations were deemed applicable."  Pls.' Opp'n & Cross-Mot. 41-42.  Defendant's refusal to furnish this information, plaintiffs argue, constitutes an effort to "set the plaintiffs up for litigation by ambush[, which t]he discovery rules are designed to prevent . . . ."  Id. at 42 (citing cases).

It is clear that the parties advance different interpretations of the scope of topic number 3. Defendant accuses plaintiffs of imprecise drafting and a failure to understand the USDA's

regulatory scheme.[18]  Def.'s Reply & Opp'n 21.  Plaintiffs claim that defendant "admits that the language 'or any other type of TSE' in Revised Topic #3 'implied that the scrapie regulations did in fact apply to TSE[s] other than scrapie.'"  Pls.' Reply 17 (quoting Def.'s Reply & Opp'n 22-23) (alteration in original).  The court is not persuaded that topic number 3 merely serves to confirm for plaintiffs that the scrapie regulations and programs do not apply to TSEs other than scrapie.  Contrary to defendant's contention that the language of topic number 3 does not reference plaintiffs' sheep at all, the court believes that plaintiffs' objective in drafting topic number 3 was to understand which regulations apply to the diagnosis of scrapie in sheep and to determine how, and through what regulatory framework, the USDA responded to plaintiffs' sheep.  It would be superfluous for the parties to conduct discovery about the USDA's scrapie regulation program generally without regard to the context of plaintiffs' sheep, particularly in light of defendant's apparent position that the scrapie regulations did not apply to plaintiffs' sheep.  See Pls.' Reply 17 (citing Pls.' App. 118 (Sutton Dep. 236:8-18)).

The court therefore disagrees with defendant's interpretation that topic number 3 "does not request information about the regulations applicable to the diagnosis and [the] USDA's response to an outbreak of a TSE other than scrapie."  Def.'s Mot. 38; see also Def.'s App. 549 ("Topic Number 3 do[es] not, however, seek information regarding the regulations that apply to the diagnosis of TSEs other than scrapie or the regulations that apply in the event of an outbreak of a TSE other than scrapie.").  First, given the parties' numerous discussions and efforts to arrive at an understanding of the meaning and importance of the phrase "any other type of TSE," is it quite possible that topic number 3 does not encapsulate with exact precision the entire breadth of information plaintiffs seek.  See Def.'s App. 551 (noting that the parties' discussions were tainted by a "misunderstanding of fact").  Even if this were the case, defendant certainly was aware prior to Dr. Sutton's deposition that plaintiffs' inquiry extended beyond the more limited scope of the USDA's scrapie regulatory programs, see id.; Pls.' Reply 17 ("[P]laintiffs made their understanding of this topic very clear to the Government . . . two days before Dr. Sutton's deposition . . . ."), particularly since plaintiffs insisted upon inclusion of the disputed phrase pending confirmation that no other regulations applied.

Second, defendant's interpretation of topic number 3 is so narrow as to beg the question as to what regulations do, in fact, apply to the diagnosis and the USDA's response to an outbreak

_____

[18]  According to defendant, the USDA's "broad regulatory authority to take measures necessary to protect human and animal safety" permit it to "resort to the statutory authorities and the myriad of regulations available that permit it to act, depending upon the particular circumstances" or to undertake, on occasion, "creat[ion of] regulatory programs designed to respond to particular health risks."  Def.'s Reply & Opp'n 21.  The USDA's scrapie program is an example of the latter.  Id.  Thus, defendant notes, when an animal within the United States tests positive for domestic classical scrapie, the USDA's response "is guided by the scrapie program regulations."  Id.  However, when an animal tests positive "for an exotic TSE, . . . the USDA's authority to respond derives from its general statutory and/or regulatory authority . . . ."  Id.

of "any other type of TSE," including an "atypical TSE of foreign origin."  Plaintiffs assert that "the USDA's contention is that this supposed 'disease' is a generic name assigned to a specific TSE for which the Government did not and/or could not identify . . . ."  Def.'s App. 551. Therefore, the fact that "Dr. Sutton answered all of plaintiffs' questions regarding the applicability of the scrapie regulations to TSE[s] other than scrapie," Def.'s Reply & Opp'n 25, answers only part of the question.  See Pls.' Reply 18 ("The Government alleges that plaintiffs have not identified a single question not answered . . . but the Government itself indicated . . . that Dr. Sutton was not being designated to testify to questions relating to the regulation of TSEs other than scrapie.").  Indeed, plaintiffs' counsel stated in his June 26, 2007 electronic mail communication to defendant's counsel that, two days before Dr. Sutton's deposition, he learned "for the first time . . . from you that the USDA considered other regulations applicable to the diagnosis (or other associated event) of a TSE in sheep and presumably my clients' sheep.  I asked you to identify what those regulations were, but you refused to do so."  Def.'s App. 551. Certainly plaintiffs cannot identify a question that was not answered by Dr. Sutton because any unanswered questions regarding "the regulations that apply to the diagnosis of TSEs other than scrapie or the regulations that apply in the event of an outbreak of a TSE other than scrapie," id. at 550, were preemptively excluded by defendant in the first instance based upon its refusal to designate Dr. Sutton in that area.  It is clear that this testimony is what plaintiffs also intended to elicit through their topic number 3.  As they acknowledge, plaintiffs "cannot now be faulted for failing to ask questions which the Government explicitly stated Dr. Sutton was not being designated to testify regarding . . . ."  Pls.' Reply 18.

Plaintiffs are entitled to obtain testimony concerning "what regulations were applicable to the outbreak of [an atypical TSE of foreign origin] and what other regulations would apply to the diagnosis (or other associated event) of a TSE in sheep besides scrapie" because defendant has refused to disclose this information.  Def.'s App. 551.  Where, as here, defendant has adopted a position that particular regulations are inapplicable, plaintiffs are entitled to discovery in order to determine which regulations defendant deemed applicable.  To the extent that topic number 3 contemplates testimony concerning the USDA's scrapie regulatory programs, including which regulations (1) apply to the diagnosis of TSEs other than scrapie, (2) apply in the event of an outbreak of a TSE other than scrapie, and (3) were applied to the diagnosis of plaintiffs' sheep with an atypical TSE of foreign origin, defendant has not satisfied its RCFC 30(b)(6) obligation.

Additionally, defendant has not made a good cause showing that a protective order is warranted with respect to topic number 3.  Aside from advancing its interpretation that the testimony plaintiffs seek is beyond the scope of the plain language of the RCFC 30(b)(6) USDA notice, defendant has not demonstrated–and the court has not found–a "particular need for protection" from additional witness testimony.  Cipollone, 785 F.2d at 1121.  Accordingly, the court denies defendant's motion as it relates to topic number 3 and grants plaintiffs' cross-motion to compel an appropriate designee who can testify as to the matters described above.

### C. Plaintiffs' Revised RCFC 30(b)(6) USDA Topic Number 11

In their revised USDA Rule 30(b)(6) topic number 11,[19] plaintiffs seek testimony concerning

> [t]he basis for the decision(s) to issue the June 2000 Orders to Dispose and the July 2000 Declaration of Extraordinary Emergency, including why the Faillaces' sheep were included in the Order to Dispose and the Declaration and the rationale as to why the Western blot results on the four Freeman sheep found to be positive in June 2000 were not questioned, given other test[] results in its possession at the time.

Def.'s App. 123.  According to defendant, Drs. Detwiler, O'Rourke, and Hall "testified extensively" about other tests the USDA performed "as of the time it issued the Declaration of Extraordinary Emergency and the basis for [the] USDA's decision to issue a Declaration of Extraordinary Emergency, despite some of the negative test results they had obtained as of the time of [the] USDA's issuance of the Declaration."[20]  Def.'s Mot. 32.  As such, defendant states that it proffered Dr. Detwiler's testimony "as well as some of the testimony taken at the depositions of Drs. O'Rourke and Hall," but that plaintiffs refused to accept those designations.

---

[19]  The original topic number 11 sought information concerning

> [a]ny discussion(s) and information leading to the 2000 decision to issue the Declaration of Extraordinary Emergency and Orders to Dispose, including but not limited to the timing of those decisions, the parties involved in those decisions, the basis for those decisions, any communication about those decisions, any documents or other information relied upon in making those decisions, and the scope of that decision (i.e., why the USDA included all of Mr. Freeman's sheep and the Faillaces' sheep within the Orders to Dispose).

Def.'s App. 19.  By stating that "[t]he language of the disputed topics from Plaintiffs' Revised USDA 30(b)(6) Deposition Notice fits squarely within the scope of RCFC's 30(b)(6)'s 'reasonable particularity' requirement," Pls.' Opp'n & Cross-Mot. 26, plaintiffs suggest that the original language of topic number 11 was, in fact, overly broad.  See id. at 27 (stating that "[o]nce plaintiffs proffered reasonably-particular topics," defendant had an affirmative obligation to designate and prepare a witness to testify).

[20]  In a June 19, 2007 letter to plaintiffs' counsel, defendant's counsel states that, because Dr. Detwiler already testified "extensively" concerning topic number 11, defendant designated Dr. Detwiler's testimony, along with "some relevant testimony" provided by Dr. O'Rourke and responsive testimony provided by Dr. Rubenstein.  Def.'s App. 71.  According to defendant, Dr. Rubenstein "would be in the best position to know why he did not conduct additional testing, [but] he testified that he did not recall why he did not do so."  Id.

-28-

Id. at 33; accord id. at 28 (indicating that plaintiffs rejected defendant's offer "to designate the relevant and reliable testimony that is responsive to plaintiffs' USDA Rule 30(b)(6) deposition notice in lieu of requiring the Government to designate witnesses to respond" to topic number 11); id. at 33 (characterizing plaintiffs' refusal as "unreasonable" because the proffered designated testimony "is fully responsive to all of the sub-topics contained in topic number 11"). It argues that any additional testimony that the government could provide "would probably" be derived from the same witnesses, id., which "would be unnecessarily duplicative and burdensome," id. at 34.

In its motion, defendant specifically identifies Dr. Detwiler's testimony as providing the USDA's "primary response" to topic number 11.  Id. at 32.  According to defendant, Dr. Detwiler testified that the USDA issued its Declaration of Extraordinary Emergency "because four of the sheep from Mr. Freeman's farm tested positive for the presence of a TSE and [because] the epidemiological evidence from Europe [indicated] that sheep may have been exposed to meat and bone meal contaminated with BSE."  Id. at 33.  Notwithstanding that the NVSL's test results did not indicate that plaintiffs' sheep were infected with scrapie and that other test results could not determine whether plaintiffs' sheep had scrapie or BSE, defendant notes that Dr. Detwiler testified that the USDA issued a Declaration of Extraordinary Emergency because "the western blot tests only detect[] the marker for a TSE."  Id.  Defendant also emphasizes that Dr. Detwiler's testimony indicates that the USDA seized the Faillaces' sheep in addition to Mr. Freeman's sheep because the flock belonging to the former "was made up predominantly" of sheep from the Freeman flock.  Id.

Plaintiffs respond with various arguments.  First, as noted above, plaintiffs object to defendant's attempts to designate testimony of individual who had already been deposed in their individual capacity and state that they "seek to depose the USDA about the policy decisions that led to the taking of plaintiffs' property." Pls.' Opp'n & Cross-Mot. 28.  They note, however, that with respect to topic number 11, "all of the witnesses on which the Government relies were deposed in their individual capacities."  Id. at 30-31 n.18; cf. Def.'s App. 127 (stating that, although "it is true that Drs. Detwiler, Smith, Zeilenga, Race, and O'Rourke did not prepare themselves to testify as if they were Rule 30(b)(6) deposition witnesses," those witnesses "were in the best position to offer the government's testimony concerning those matters").  As such, plaintiffs allege that defendant "did not designate these witnesses as RCFC 30(b)(6) designees from the outset and did not prepare them to testify on matters outside their personal knowledge." Pls.' Opp'n & Cross-Mot. 31; see also id. at 30 (stating that RCFC 30(b)(6) witnesses must be prepared to testify about matters "'not only known by the deponent, but those that should be reasonably known by the designating party'" (quoting Alexander v. FBI, 186 F.R.D. 137, 141 (D.D.C. 1998))); id. at 31 (citing deposition testimony where government witnesses indicated that they either reviewed only their own files or did not review their own files in preparation for their depositions and, in some cases, did not speak to anyone about their depositions aside from government counsel).

Second, plaintiffs argue that defendant's witnesses "either affirmatively distanced themselves or were distanced from the USDA's decision-making authority at their respective depositions." Id. at 32. Such responses, plaintiffs claim, "undermine the entire purpose of an RCFC 30(b)(6) deposition," which is designed to "'prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying[.]'" Id. (quoting Alexander, 186 F.R.D. at 141) (second alteration in original). As one example, plaintiffs cite to portions of Dr. Detwiler's testimony in which she indicated that plaintiffs would "'have to ask the USDA decision-makers'" for answers to policy questions. Id. (quoting Pls.' App. 69-70 (Detwiler Dep. 197:20-198:7, Jan. 30, 2007)). Plaintiffs highlight this example, along with several others, as "representative of the reason an RCFC 30(b)(6) [deposition] is necessary" because, they claim, it is "unfair for the Government to present these witnesses in their individual capacity, not having them prepared as they would have been had they been RCFC 30(b)(6) witnesses, and then seek to essentially retroactively designate the testimony of these witnesses as responsive to plaintiffs' Revised USDA 30(b)(6) Deposition Notice." Id.

Third, with respect to all of the disputed testimony, and not merely testimony related to topic number 11, plaintiffs argue that "[f]or over five months, the Government had the duty to identify and produce an RCFC 30(b)(6) designee(s) on behalf of the USDA for the disputed topics. With the exception of Topic ## 3 and 21, it failed to do so." Id. at 21. Now, plaintiffs claim, defendant "is scrambling to come up with a way to escape the alleged 'burden' of providing an RCFC 30(b)(6) deposition that it agreed to honor at the outset of deposition discovery." Id. Furthermore, plaintiffs allege that, although defendant "agreed to the RCFC 30(b)(6) mechanism," defendant nonetheless "made no effort to coordinate depositions so that certain individuals' testimonies would satisfy the Original USDA 30(b)(6) Deposition Notice." Id. at 22; see also id. at 27 (indicating that defendant had an affirmative duty to designate and prepare a witness who could address RCFC 30(b)(6) topics but that defendant "did not comply with that obligation").

The court agrees with plaintiffs. Here, plaintiffs rejected defendant's offer to designate testimony obtained from Drs. Detwiler, Smith, Zeilenga, Race, and O'Rourke concerning topic number 11 because these witnesses testified in their individual capacities. Indeed, plaintiffs are under no obligation to accept designated testimony in response to an RCFC 30(b)(6) notice. Additionally, because plaintiffs seek testimony that would be binding upon the USDA, they objected to what they describe as "cherry-pick[ed] prior [individual] testimony that favors the USDA." Def.'s App. 163. Due to the qualitative differences between testimony furnished during an individual's deposition and a designee's RCFC 30(b)(6) deposition, see Alloc, Inc., 2006 WL 2527656, at *2, plaintiffs' position is reasonable. Therefore, the court will not require plaintiffs to accept defendant's proposed designations of individual testimony as RCFC 30(b)(6) deposition testimony. The court will also not require defendant to designate the entirety of these witnesses' testimony, as plaintiffs request, see Pls.' Opp'n & Cross-Mot. 48, because doing so could attribute to the government binding testimony when it did not offer testimony through its own designee.

The court concludes that RCFC 30(b)(6) testimony concerning topic number 11 is appropriate and rejects defendant's argument that additional testimony would be unnecessarily duplicative and cumulative. See Def.'s Reply & Opp'n 26-27. Defendant has not demonstrated good cause for shielding itself from further testimony concerning topic number 11 with its assertion that any RCFC 30(b)(6) testimony "would probably" be derived from the same witnesses. Def.'s Mot. 33. Such an argument does not absolve defendant of its affirmative duty to produce an RCFC 30(b)(6) designee. See Dairyland Power Coop., 79 Fed. Cl. at 714. Although defendant suggests that Drs. Detwiler, Smith, Zeilenga, Race, and O'Rourke "were in the best position to offer the government's testimony" concerning topic number 11, Def.'s App. 127, none of those witnesses offered the government's testimony during their depositions. Additionally, defendant, while not required to produce any of these individuals as its RCFC 30(b)(6) designee, see Capital Props., Inc., 49 Fed. Cl. at 613 (noting that an entity "is free to prepare another witness to testify" if that witness has already provided testimony), nonetheless bears the responsibility of producing at least one designee with knowledge about the relevant subject matter when responding to an RCFC 30(b)(6) notice, Vegas Constr. Co., 2008 WL 818947, at *3. Of course, defendant is not compelled to produce either the most knowledgeable witness or multiple witnesses in order to satisfy its obligation. Rather, defendant must designate at least one witness who possesses the necessary knowledge about the subject matter such that his or her testimony will be binding upon it. See Rodriguez, 293 F. Supp. 2d at 311. The fact that defendant may choose to designate an individual who already offered testimony concerning topic number 11 in his or her individual capacity "does not insulate [it] from the requirements of Rule 30(b)(6)." ICE Corp., 2007 WL 1732369, at *3.

Accordingly, the court denies defendant's motion as it relates to topic number 11 and grants plaintiffs' cross-motion to compel an appropriate designee who can testify as to the matters described above. Defendant shall satisfy its affirmative obligation under RCFC 30(b)(6) by offering testimony from at least one designee who possesses sufficient knowledge about topic number 11 such that the testimony will be binding upon it.

### D.  Plaintiffs' Revised RCFC 30(b)(6) USDA Topic Numbers 12 and 14

Because the parties raise similar arguments with respect to topic numbers 12 and 14, the court addresses both topics together. In their revised RCFC 30(b)(6) USDA topic number 12, plaintiffs seek testimony concerning the government's basis for diagnosing plaintiffs' sheep with "an atypical TSE of foreign origin." Topic number 12 states:

> The basis for diagnosing Plaintiffs' sheep as infected with or exposed to an "atypical transmissible spongiform encephalopathy [("TSE")] of foreign origin" in 2000, including identifying specific evidence demonstrating that the sheep were infected with "an atypical [TSE] of foreign origin" and not scrapie or BSE; identifying the individual(s) at the USDA who officially diagnosed the sheep with this disease and the information upon which he or she relied in making this diagnosis; explaining how the disease was named; and explaining the USDA's

contention for how the sheep became infected.

Def.'s App. 123 (alterations in original).  Revised RCFC 30(b)(6) USDA topic number 14 seeks additional testimony concerning the government's basis for determining that plaintiffs' sheep were infected with an "atypical TSE of foreign origin" and not scrapie:

> The basis for the USDA's contention that testing performed on plaintiffs' sheep subsequent to the seizure in March 2001 provided "further evidence" that the sheep were infected or exposed to an "atypical [TSE] of foreign origin," including the identification of any specific evidence demonstrating that these sheep were infected with "an atypical [TSE] of foreign origin" and not scrapie or BSE; and explaining the USDA's contention for how the sheep became infected.

Id. (alterations in original).

According to defendant, plaintiffs already deposed a government witness concerning the information contained in topic numbers 12 and 14 when it proffered Dr. Hall's testimony.  Def.'s Mot. 22, 26; Def.'s Reply & Opp'n 16-17.  Dr. Hall "was designated to respond to all topics identified in the NVSL Rule 30(b)(6) deposition notice, with the exception of topic number 6 . . . ."  Def.'s Reply & Opp'n 17.  Defendant argues that it satisfied its obligation to provide testimony concerning RCFC 30(b)(6) USDA topic numbers 12 and 14 because topic number 12 is "virtually identical" to plaintiffs' RCFC 30(b)(6) NVSL topic numbers 5 and 14 and topic number 14 is "virtually identical" to plaintiffs' RCFC 30(b)(6) NVSL topic numbers 5 and 9.  Id. at 16; accord Def.'s Mot. 27 (stating that topic numbers 12 and 14 "are duplicative and cumulative because . . . these topics were the subject of plaintiffs' NVSL Rule 30(b)(6) deposition notice").  Moreover, defendant maintains that plaintiffs "do not contest" the fact that these RCFC 30(b)(6) USDA topics are virtually identical to RCFC 30(b)(6) NVSL topic numbers 5, 9, and 14,[21] Def.'s Reply & Opp'n 16, and that "no basis exists for plaintiffs to re-depose a Government witness concerning these topics," Def.'s Mot. 24.  Defendant also notes that it offered to designate certain testimony from Dr. Hall's RCFC 30(b)(6) NVSL deposition and Dr. Detwiler's testimony as responsive to topic numbers 12 and 14.  Def.'s Reply & Opp'n 19;

---

[21]  Plaintiffs' RCFC 30(b)(6) NVSL topic number 5 seeks testimony concerning "[t]he results of all NVSL testing obtained on the sheep, including but not limited to the negative results of the [immunohistological] and histological tests received prior to and after the seizure of the sheep."  Def.'s App. 9.  Plaintiffs' RCFC 30(b)(6) NVSL topic number 9 concerns communications with the New York Institute for Basic Research in Developmental Disabilities ("NYIBR") "regarding the results received from the NYIBR's testing of the sheep, the timing of those communications, and any documents exchanged between the NYIBR and the NVSL relating to such tests."  Id. at 10.  Plaintiffs' RCFC 30(b)(6) NVSL topic number 14 concerns "[t]he scientific definition of 'an atypical TSE of a foreign origin,' the source of that definition, any prior use of the phrase 'an atypical TSE of a foreign origin,' and any documents or other information referencing the phrase 'an atypical TSE of a foreign origin.'"  Id.

accord Def.'s Mot. 26-27 ("The Government proffered Dr. Detwiler's testimony in conjunction with Dr. Hall's testimony as responsive to topic number 14 of plaintiffs' USDA Rule 30(b)(6) deposition notice."). According to defendant, plaintiffs rejected this offer. Def.'s Mot. 27; Def.'s Reply & Opp'n 19.

Defendant further argues that "[b]ecause [the] USDA and [the] NVSL are both Federal entities, plaintiffs should be prohibited from deposing the Government a second time with respect to these topics." Def.'s Mot. 18; see also Def.'s Reply & Opp'n 17 ("[The] USDA and the NVSL are not separate Federal entities. . . . The NVSL and the USDA are not two separate governmental entities separated by numerous layers of bureaucracy, serving different purposes within the structure of Government, as plaintiffs contend."). According to defendant, the NVSL is a unit of the Veterinary Services ("VS"), the VS is a branch of the Animal Plant Health Services ("APHS"), and the APHS is an agency of the USDA.[22] Def.'s Mot. 18. Moreover, defendant emphasizes that it "has never represented that [the] USDA and [the] NVSL are separate governmental entities." Def.'s Reply & Opp'n 18. Accordingly, defendant submits that any entitlement plaintiffs claim for a right to depose "the Government a second time concerning these topics" stems from plaintiffs' "confus[ion] about the role of [the] NVSL with respect to [the] USDA."[23] Def.'s Mot. 18. Because plaintiffs "are unable to demonstrate that [the] USDA is a governmental entity separate from [the] NVSL for the purposes of deposing a USDA official in addition to an NVSL official," Def.'s Reply & Opp'n 19, defendant seeks a protective order precluding plaintiffs "from re-deposing the Government" concerning topic numbers 12 and 14, id. at 20 (citing Amistar Jet Charter v. Signal Composites, Inc., 244 F.3d 189, 192 (1st Cir.

---

[22] The APHS is an agency of the USDA that "provides leadership in insuring the health and care of animals and plants." Def.'s App. 481. Its mission is "[t]o protect the health and value of American agriculture and natural resources." Id. at 487. The VS fulfills this mission by "protecting and improving the health, quality, and marketability of our Nation's animals, animal products, and veterinary biologies. This is accomplished through preventing, controlling, and eliminating animal diseases, and by monitoring and promoting animal health and productivity." Id. at 503. When it conducts testing, the APHS relies upon the NVSL, Def.'s Reply & Opp'n 17, which "support[s] animal disease prevention, detection, control, and eradication programs and . . . provide[s] diagnostic assistance to the livestock and poultry industries," Def.'s App. 508.

[23] Defendant contends that plaintiffs' theory would entitle plaintiffs to "command the appearance of a representative from each of the 19 agencies, as well as all of their branches, as well as [the] USDA when they serve a Rule 30(b)(6) deposition notice upon the United States simply because [the] USDA is comprised of separate agencies and agency branches." Def.'s Reply & Opp'n 18-19 (citation omitted). But see Pls.' Reply 11 (arguing that RCFC 30(b)(6) depositions are constrained by determinations of relevancy and that the only relevant entities at issue here are the USDA and the NVSL).

2001)).[24]  Alternatively, if defendant is required to produce a designee, it requests that the court enter an order precluding plaintiffs from asking its designee "the same question or series of questions plaintiffs have previously asked the Government's designated witness."  Def.'s Mot. 28 (citing Williams v. Sprint/United Mgmt. Co., No. CIVA032200JWLDJW, 2006 WL 334643 (D. Kan. Feb. 8, 2006)).[25]

Additionally, defendant states that it is "significant . . . that the Vermont district court has already issued rulings" on the issues encompassed by topic number 12.  Id. at 23.  Defendant notes that the district court concluded that plaintiffs' flock was comprised of "'sheep of foreign origin which may have been exposed to BSE through their own consumption or their ancestors' consumption . . . of contaminated food.'"  Id. at 23-24 (quoting Freeman v. USDA, No. 1:00CV255, Ruling Mots. Prelim. Inj. 6 (D. Vt. Aug. 1, 2000) and Ag-Innovations v. USDA, No. 1:00CV257, Ruling Mots. Prelim. Inj. 6 (D. Vt. Aug. 1, 2000)).  The district court, defendant states, determined that Dr. Rubenstein's test results suggested one of three conclusions and confirmed that plaintiffs' sheep were diseased.  Id. at 24.

Finally, defendant argues that plaintiffs never alleged that defendant's designee provided inadequate responses to RCFC 30(b)(6) NVSL topic numbers 5, 11, and 14.  Def.'s Reply & Opp'n 19.  In the event that such responses were inadequate, defendant emphasizes that plaintiffs

_____

[24]  In Amistar Jet Charter, the United States Court of Appeals for the First Circuit held that the district court was "not 'plainly wrong'" when it granted a motion for a protective order to quash four subpoenas issued to employees of a nonparty corporation when that corporation had been previously subpoenaed pursuant to FRCP 30(b)(6) and presented two witnesses to testify in connection with those subpoenas.  244 F.2d at 191-93.

[25]  In Williams, plaintiffs sought to depose a witness in his individual capacity after he was previously deposed as an FRCP 30(b)(6) representative of defendant.  2006 WL 334643, at *1.  The court permitted the deposition, finding that plaintiffs were not required to obtain leave from the court pursuant to FRCP 30(a)(2)(B) because the witness had already been deposed.  Id.  It ruled, however, that plaintiffs could not ask questions that they previously asked during the deponent's FRCP 30(b)(6) deposition as doing so "would be unreasonably duplicative and thus subject to the limitation of Rule 26(b)(2)."  Id.; see supra Part II.A. (discussing RCFC 26).

Plaintiffs emphasize that Williams is distinguishable because that case involved the deposition of a witness in his individual capacity after he was deposed as an FRCP 30(b)(6) witness, whereas the instant case presents the reverse situation whereby plaintiffs seek to depose an RCFC 30(b)(6) witness after the witness previously testified in his individual capacity.  Pls.' Opp'n & Cross-Mot. 36 n.21.  Plaintiffs instead rely upon ICE Corp. and emphasize that "'a caution against duplicative questioning is not warranted [here] because such a caution would prevent [the party seeking the deposition] from effectively using [Federal Rule] 30(b)(6) depositions as they were designed, i.e., to prevent sandbagging.'"  Id. (quoting ICE Corp., 2007 WL 1732369, at *4) (second & third alterations in original).

could have sought–but ultimately did not seek–leave to conduct an additional RCFC 30(b)(6) deposition pursuant to RCFC 30(a)(2).[26]  Id.  Defendant asserts that plaintiffs' "fail[ure] to comply with the rules of this Court by [not] seeking leave of the Court to obtain additional discovery" militates against permitting plaintiffs to depose a designee on topic numbers 12 and 14. Id. at 19-20.

Plaintiffs reject defendant's assertion that the NVSL and the USDA are, for purposes of an RCFC 30(b)(6) motion, the same entity, Pls.' Opp'n & Cross-Mot. 33, and consider defendant's position "[o]ne of the most blatant examples of how the Government has distorted the RCFC 30(b)(6) process," Pls.' Reply 8; accord Pls.' Opp'n & Cross-Mot. 33 ("Not only did the Government fail to inform plaintiffs of its novel interpretation of the requirements of RCFC 30(b)(6), its position that a deposition of the NVSL is inherently one of the USDA is plainly wrong.").  Arguing that the NVSL and the USDA are "two separate governmental entities, separated by numerous layers of bureaucracy, and serving different purposes within the structure of the Government," plaintiffs maintain they are entitled to depose both.  Pls.' Opp'n & Cross-Mot. 33; accord id. at 35 ("[I]t makes practical sense to depose both the NVSL and the USDA separately when, as the Government itself points out, there are numerous layers of bureaucracy separating the two entities."); Pls.' Reply 9 ("[F]or purposes of the RCFC 30(b)(6) notices submitted in this case, the USDA and the NVSL are separate entities that plaintiffs have a right to depose separately.").  Plaintiffs, relying upon SEC v. Selden, 484 F. Supp. 2d 105, 106 (D.D.C. 2007), and In re Vitamins Antitrust Litigation, 217 F.R.D. 223, 233 (D.D.C. 2002), liken the relationship between the NVSL and the USDA to that of a wholly-owned subsidiary and its parent corporation and maintain that they may depose each separately.[27]  Pls.' Opp'n & Cross-

_____

[26]  RCFC 30(a)(2) requires that a party obtain leave of court, "which shall be granted to the extent consistent with the principles stated in RCFC 26(b)(2)," if, among other things, "a proposed deposition would result in more than ten depositions being taken under this rule," RCFC 30(a)(2)(A), or "a person to be examined already has been deposed in the case," RCFC 30(a)(2)(B).

[27]  In Seldin, the Securities and Exchange Commission filed an enforcement action against defendant who, in preparing his defense, served two subpoenas on the United States Food and Drug Administration ("FDA") and the Center for Biologics Evaluation and Review, a division of the FDA.  484 F. Supp. 2d at 106.  Referring to both agencies collectively as the FDA, the court denied the FDA's motion to quash the subpoenas on the grounds that the FRCP are not negated by the FDA's own regulations promulgated under the authority recognized by United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951).  484 F. Supp. 2d 106, 108-09. The In re Vitamins Antitrust Litigation court rejected arguments that it would be duplicative and unduly burdensome for two companies to produce FRCP 30(b)(6) witnesses when, during the relevant period, one company was a wholly-owned subsidiary of the other because defendant "previously and successfully argued that [the wholly-owned subsidiary] should not be required to respond to a request propounded on [the parent] because they are separate entit[ies]" and now advanced "the opposite position" in order to avoid the discovery request.  217 F.R.D. at 233.

-35-

Mot. 34-35.  Furthermore, plaintiffs argue that defendant's

> after-the-fact assertion that Dr. Hall testified on behalf of both the NVSL and the USDA is flatly inconsistent with the Government's objections during the deposition that certain policy decision were "beyond the scope of the topics listed" and "beyond the scope of [Dr. Hall's] responsibilities" because he was "not a policy maker."

Pls.' Reply 9 (quoting Pls.' App. 79-80 (Hall Dep. 124:17-125:3, Feb. 22, 2007)) (alteration in original); see also Pls.' Opp'n & Cross-Mot. 36 (stating that, "[p]rior to Dr. Hall's deposition, the Government had the option of designating him for USDA Topic ## . . . 12[] and 14, but it chose not to do so").  The "only result consistent with RCFC 30(b)(6) and the understanding of both parties at the time Dr. Hall was deposed," plaintiffs argue, is to permit them to depose a designee from both the NVSL and the USDA.  Pls.' Opp'n & Cross-Mot. 36.

Additionally, plaintiffs argue that the Vermont district court's rulings do not negate their need for the USDA's testimony concerning topic number 12.  Citing Rose Acre Farms, Inc. v. United States, 373 F.3d 1177, 1195 n.15 (Fed. Cir. 2004), cert. denied, 545 U.S. 1104 (2005), plaintiffs maintain that the United States Court of Appeals for the Federal Circuit ("Federal Circuit") "specifically rejected the argument that a plaintiff's challenge to federal agency action in a previous district court litigation collaterally estops that plaintiff from addressing the governmental interest issues related to a takings claim."[28]  Pls.' Opp'n & Cross-Mot. 37.  Here, plaintiffs emphasize that they are not challenging the validity of the underlying regulations; rather, plaintiffs "seek to build a case against the Government's asserted nuisance defense and explore whether payment for the Government's actions should be borne by the public."  Id.  Furthermore, plaintiffs assert that the district court "never made a judicial determination that plaintiffs' respective flocks were infected with a TSE."  Id.  Even if the court were to determine that the district court did, in fact, make such a determination, plaintiffs note that the district court's judgment was vacated as moot after defendant seized plaintiffs' sheep prior to the conclusion of plaintiffs' appeal to the United States Court of Appeals for the Second Circuit ("Second Circuit").  Id. at 38 (citing Ag-Innovations, Inc. v. USDA, 6 Fed. App'x 97, 98 (2d Cir. 2001); see also id. at 38-39 (citing case law from the United States Supreme Court and the

---

Defendant argues that plaintiffs' reliance upon In re Vitamins Antitrust Litigation is misplaced and that Selden is inapplicable.  Def.'s Reply & Opp'n 18-19.  With respect to the former, defendant emphasizes that the court rejected the companies' request based upon a prior, inconsistent argument that they were separate entities.  Id. at 18.  With respect to the latter, defendant states that it "has not alleged in this case that the agency's Touhy regulations preclude the Government from producing a witness . . . ."  Id. at 19.

[28]  Defendant did not address plaintiffs' collateral estoppel arguments because "[n]one of the arguments [it] raised in [its] motion for protective order or in this brief depend upon the findings of the Vermont district court."  Def.'s Reply & Opp'n 16 n.6.

Federal Circuit indicating that a vacated judgment has no collateral estoppel effect).  Lastly, plaintiffs note that even if findings on the actual health of the sheep had been made by the district court, plaintiff Mr. Freeman would not be bound by those findings.  Id. at 39.

The court does not find that defendant's arguments justify issuance of a protective order precluding the testimony plaintiffs seek.  First, although defendant argues at great length that the NVSL and the USDA are the same entity for purposes of an RCFC 30(b)(6) deposition, defendant fails to demonstrate how the taking of a deposition concerning plaintiffs' RCFC 30(b)(6) USDA topic numbers 12 and 14 will subject it to either serious injury or an undue burden.  In fact, defendant makes no specific allegation other than opining that such a deposition would expose "each of the 19 agencies, as well as all of their branches" to potential RCFC 30(b)(6) notices.  Def.'s Reply & Opp'n 18.  This showing is not sufficient for issuance of a protective order.  The rules of this court permit discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  RCFC 26(b)(1) (emphasis added); see also Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("Even if relevant, discovery is not permitted where no need is shown . . . ." (citing FRCP 26(b)(1))).  As plaintiffs note, the only relevant entities in this case are the NVSL and the USDA.  See Pls.' Reply 11.  Thus, defendant's concerns are overstated and unfounded, and defendant fails to persuade the court that an RCFC 30(b)(6) deposition is inappropriate on this basis.

Second, the court need not determine whether the NVSL and the USDA are, in fact, the same entity or separate entities for purposes of an RCFC 30(b)(6) deposition.  The rules of this court permit an RCFC 30(b)(6) deposition of "a public or private corporation or a partnership or association or governmental agency . . . ."  RCFC 30(b)(6) (emphasis added).  Although it argues that the NVSL and the USDA are the same "entity," defendant's description of their relationship indicates that the NVSL, as a unit of the VS, is part of the APHS, which, in turn, is an agency of the USDA.  See Def.'s Mot. 18; supra note 22 and accompanying text.  Because the NVSL is part of an agency that comprises the USDA, plaintiffs are not precluded from serving an RCFC 30(b)(6) notice upon both the USDA and a division of one of the USDA's agencies.  By serving a notice upon both the USDA and the NVSL, plaintiffs have not sought a second bite at the apple.  RCFC 30(b)(6) permits plaintiffs to serve a deposition notice upon governmental agencies, and plaintiffs have not run afoul of the rule here.[29]

_____

[29] Defendant's argument that plaintiffs failed to seek leave to conduct an additional RCFC 30(b)(6) deposition pursuant to RCFC 30(a)(2) is similarly unavailing.  Although they note that Dr. Hall's responses to particular questioning indicated that he was not a policy maker, see Pls.' Reply 9, plaintiffs have not alleged that Dr. Hall's overall testimony was inadequate.  Rather, plaintiffs question why Dr. Hall was also not designated to respond to the relevant RCFC 30(b)(6) USDA topics when defendant knew that they also sought binding testimony from the USDA.  See Pls.' Opp'n & Cross-Mot. 36.  Defendant maintains that certain questions posed to Dr. Hall were outside the scope of plaintiffs' RCFC 30(b)(6) USDA topic numbers 12 and 14, thereby rendering them objectionable even if Dr. Hall had testified as the USDA's designee.  Def.'s Reply & Opp'n 20 n.8.

Third, the court is not persuaded that any ruling by the Vermont district court is relevant to the instant dispute. Indeed, defendant concedes that its arguments do not rely upon the findings of the Vermont district court. See supra note 28. Moreover, as plaintiffs note, the district court's decision was vacated and remanded with direction to dismiss as moot by the Second Circuit. See AG-Innovations, Inc., 6 Fed. App'x at 97; id. at 98 ("Where a case has been mooted on appeal, the appellate court is required . . . to vacate the district court's order and remand with direction that the district court dismiss the case for want of jurisdiction." (citing United States v. Munsingwear, 340 U.S. 36, 39 (1950))). Therefore, the court does not address plaintiffs' collateral estoppel argument because, as the Federal Circuit has recognized, a "vacated judgment 'has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case.'" U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 598 (Fed. Cir.) (quoting No E.-W. Highway Comm., Inc. v. Chandler, 767 F.2d 21, 24 (1st Cir. 1985)), cert. denied, 516 U.S. 1010 (1995).

Plaintiffs are entitled to obtain testimony from the USDA concerning topic numbers 12 and 14. Accordingly, defendant's motion is denied and plaintiffs' cross-motion to compel testimony concerning topic numbers 12 and 14 is granted. Furthermore, the court denies defendant's request that the court enter an order precluding plaintiffs from asking its designee "the same question or series of questions plaintiffs have previously asked the Government's designated witness." Def.'s Mot. 28. The cases upon which defendant relies are distinguishable from the situation presented in the instant case. See supra notes 24-25. Unlike in Amistar Jet Charter, where the court granted a protective over to quash subpoenas issued to employees of a nonparty corporation after it had already produced designees, see 244 F.3d at 191-93, the defendant here is the United States. The USDA cannot be construed as a nonparty entity, and the issue is before the court specifically because defendant has refused to produce an RCFC 30(b)(6) designee to provide testimony relating to topic numbers 12 and 14. Thus, the USDA has not already presented a witness to testify concerning these topics. Furthermore, Williams, as noted previously, is factually distinguishable and therefore inapposite. There, the court precluded inquiry into "the same question or series of questions" that plaintiffs asked of a witness during his FRCP 30(b)(6) deposition in the witness's subsequent, individual deposition. 2006 WL 334643, at *1. As plaintiffs note, the Ice Corp. court addressed the reverse situation presented in Williams. See supra note 25. In ICE Corp., the court denied plaintiff's motion for a protective order because "plaintiff fail[ed] to cite . . . any authority whereby the previous [individual] deposition of certain witnesses prevents 30(b)(6) depositions of those same witnesses." 2007 WL 1732369, at *4. Rather, it determined that FRCP 30(b)(6) "anticipates such an occurrence." Id. The court finds ICE Corp. persuasive authority for the situation presented in this case. Moreover, like the plaintiff in ICE Corp., defendant has not cited any authority that limits inquiry during an RCFC 30(b)(6) deposition on the basis of prior testimony furnished by the same witness during his or her individual deposition. Therefore, plaintiffs shall not be precluded from pursuing and addressing questions they may have asked of the government's designee during the RCFC 30(b)(6) NVSL deposition.

## E.  Plaintiffs' Revised RCFC 30(b)(6) USDA Topic Number 20

Finally, plaintiffs seek a government witness who can testify about "[t]he basis for the decision(s) to pay certain shepherds for their sheep without an appraisal and the decision to hire appraisers for Plaintiffs' sheep."  Def.'s App. 124.  Defendant argues that this topic is not relevant because "[t]he USDA['s] reason(s) for paying certain shepherds for one or more sheep the USDA purchased two or more years prior to the seizure of plaintiffs' sheep have no bearing upon the issue of whether plaintiffs have received fair market value for their sheep based upon an appraisal."  Def.'s Mot. 36; see also Def.'s Reply & Opp'n 28 n.12 (challenging the relevance of topic number 20 "to the extent that the plaintiffs seek to demonstrate that the plaintiffs bore a disproportionate impact of the agency's regulations").  Additionally, defendant indicates that plaintiffs deposed Dr. Smith "concerning his decision(s) to pay the shepherds other than Mr. Freeman and the Faillaces for their individual rams [the] USDA purchased in the period prior to the USDA's Declaration of Extraordinary Emergency."  Def.'s Mot. 36.  Because Dr. Smith "has already provided all of the relevant testimony pertaining to topic number 21, defendant argues that "no basis exists to re-depose Dr. Smith or anyone else from [the] USDA concerning its reason for purchasing the non-plaintiffs['] sheep without the benefit of an appraisal."[30]  Id. at 37; see also Def.'s Reply & Opp'n 27 ("Finally, with respect to topic number 20, plaintiffs have already deposed Dr. William Smith[,] who made the decision to pay certain shepherds for their sheep without an appraisal.").

Plaintiffs believe that topic number 20 is relevant because it "demonstrate[s] that the USDA paid plaintiffs less and treated them differently for refusing voluntarily to dispose of their sheep and for their outspoken protest of the destruction of their respective flocks."  Pls.' Opp'n & Cross-Mot. 47; see also Pls.' Reply 15 (stating that topic number 20 "address[es] the Government's decision to pay full value to other shepherds and leave their pastures unquarantined while, in response to plaintiffs' efforts to save their sheep, refusing to pay them full value for their sheep and by imposing years-long quarantines on their real property").  Plaintiffs characterize defendant's contention that topic number 20 is offered to illustrate that plaintiffs suffered a disproportionate burden as "unconvincing[]," Pls.' Opp'n & Cross-Mot. 47, and state that evidence presented at trial will demonstrate that

---

[30]  Plaintiffs' revised RCFC 30(b)(6) USDA topic number 21 seeks testimony concerning:

(a) The parties involved in the decision(s) and the basis for the agency's decision(s) as to what to pay plaintiffs for their sheep, cheese, and semen straws and any decision not to pay for the quarantines placed on plaintiffs' farms; (b) any discussions in which Dr. Clifford was involved concerning the amount to pay the plaintiffs for their sheep, cheese, and semen straws, and any decision not to pay for the quarantines placed on plaintiffs' farms.

Def.'s App. 124.

other shepherds who voluntarily sold their East Friesian sheep–all of which were
purchased from either Mr. Freeman or the Faillaces–to the USDA (1) were paid
over two to three times more money per head than plaintiffs were; (2) were paid
without their flocks being appraised; and (3) did not have quarantines placed on
their properties by the USDA.

Id. at 47-48; see also Def.'s App. 62 (articulating plaintiffs' position that Dr. Smith's testimony
"does not address why . . . payments were not available to Mr. Freeman or the Faillaces or why
appraisals were required for their sheep").  As such, plaintiffs maintain that topic number 20
"bears directly" upon whether plaintiffs were paid fair market value for their sheep or whether
"the value of their sheep was discounted through the guise of an appraisal to punish them for
protesting the Government's actions."  Pls.' Opp'n & Cross-Mot. 48.

 The court is not persuaded by defendant's relevancy objection because, as discussed
above, plaintiffs are entitled to seek testimony that would aid in the development of their theory
of the case.  See id.; Pls.' Reply 16 (arguing that plaintiffs are entitled to "show . . . significant
differences in valuation to prove their case that the Government has not paid them fair market
value for their sheep").  Because "[i]t is well established that 'comparable sales are considered by
the courts to be the best evidence of fair market value, and thus preferable to other forms of
valuation,'" Bassett, N.M. LLC v. United States, 55 Fed. Cl. 63, 78 (2002) (quoting Stearns Co.,
Ltd. v. United States, 53 Fed. Cl. 446, 458 (2002)), plaintiffs are entitled to explore testimony
bearing on the question of whether plaintiffs were, in fact, paid market value for their sheep.
Due to the differences between RCFC 30(b)(6) and individual testimony, see supra Part II.C,
defendant did not satisfy its RCFC 30(b)(6) obligation by merely proffering selections from Dr.
Smith's individual testimony.  Despite this determination, the parties, as discussed infra, indicate
a willingness to agree that designated testimony is appropriate for topic number 20.  Therefore,
the court examines Dr. Smith's testimony in order to determine whether designations are
adequate for topic number 20 or whether additional live testimony is required.

 Plaintiffs contend that Dr. Smith's testimony did not explain why the USDA appraised
plaintiffs' sheep.  See Def.'s App. 62.  Dr. Smith testified that he was involved in discussions
related to the compensation plaintiffs received for their sheep based upon appraisals, id. at 460-
61 (Smith Dep. 56:20-57:1, Nov. 15, 2006), and that he also determined the amounts that the
USDA would pay other shepherds for their sheep, id. at 472 (Smith Dep. 87:18-20).  Because he
testified on his own behalf and not as the government's USDA designee, Dr. Smith was not in a
position to opine as to the USDA's decision to appraise plaintiffs' sheep.  Nevertheless, plaintiffs
did obtain from Dr. Smith responsive answers related to the matters set forth in topic number 20.

 Topic number 20 seeks, in part, the "basis for the decision(s) to pay certain shepherds for
their sheep without an appraisal . . . ."  Id. at 124.  Dr. Smith's testimony sheds light into this area
of inquiry.  First, Dr. Smith distinguished the amounts offered to other shepherds for their sheep
from those amounts offered to plaintiffs and testified that comparing those transactions was akin
to "comparing apples and oranges."  Id. at 464 (Smith Dep. 79:6).  He then explained that the

amounts the USDA paid to other shepherds for their sheep "do not reflect fair market value," id. (Smith Dep. 79:12), because they represented an amount based upon the original purchase price of the sheep "plus a significant premium and financial incentive for me to buy those animals," id. (Smith Dep. 79:12-15).  Dr. Smith testified that he offered a significant premium to other shepherds for their sheep in an attempt to control and contain an outbreak quickly:

> [Y]ou need to understand that we had New York State involved, Vermont involved, I had F2 progeny in the State of New Hampshire and F2 progeny in Connecticut.  And what was going through my mind at the time was, . . . I need to shrink this outbreak from a multi-state, multi-flock to as few states and as few flocks as I can.
>
> So I went out on a professional limb and offered [the shepherds] a substantial premium for [the sheep] so they would allow me to buy those animals. So I do not think it is representative of the value of the sheep to just use what I paid for those certain rams, because I paid them a lot of money.

Id. at 464-65 (Smith Dep. 79:22-80:13).  As a result, Dr. Smith characterized the amounts paid to these shepherds as an "inflated price."  Id. at 464 (Smith Dep. 79:16); see also id. at 478 (Smith Dep. 104:17-105:1) (indicating that the sheep purchased at a premium price were not appraised and were bought for "diagnostic purposes").  Additionally, Dr. Smith testified that these sheep were not appraised because "we knew what [the shepherds] paid for them.  I had a baseline figure to pay for them."  Pls.' App. 109 (Smith Dep. 107:7-8).  The court finds that this testimony is responsive to topic number 20.

Topic number 20 also seeks information concerning "the decision to hire appraisers for Plaintiffs' sheep."  Def.'s App. 124.  Again, Dr. Smith offered testimony about this area of inquiry.  Because he neither appraises sheep nor has experience or expertise in appraising sheep, id. at 462 (Smith Dep. 77:10-14); cf. id. 465-66 (Smith Dep. 80:16-81:9) (indicating that, although he is not an expert appraiser, Dr. Smith has "been around the fence a couple times" and testified that certain animals within a herd are "superior genetically, superior in their confirmation, genetics, [and] milk production," as opposed to others that are "a degree or two less," "an average group," and "poor doers"); id. at 468 (Smith Dep. 83:17-19) (indicating that "some animals may be worth more, and some people may be willing to buy them at that higher price"), Dr. Smith testified that he relied upon the "opinion and appraisal of the appraisers" when he offered plaintiffs compensation for their sheep, id. at 462 (Smith Dep. 77:19-20); see also id. at 463 (Smith Dep. 78:15-20 (indicating that Dr. Smith "accepted" the "data provided . . . on what the fair market value was for the sheep that [the appraisers] inspected . . . based on information they had")); id. at 469 (Smith Dep. 84:8-10 ("[T]hat's what the appraiser told me the fair market value was, so I based it on what the appraisers were telling me.")).  Moreover, Dr. Smith testified that he "handled" plaintiffs' sheep "with consultation with the Agency" and "didn't feel empowered to negotiate with them at all," whereas he "dealt with [the other shepherds'] flocks [him]self."  Pls.' App. 110 (Smith Dep. 108: 16-19).

Additionally, Dr. Smith provided testimony related to plaintiffs' contention that topic number 20 supports their theory that the value of plaintiffs' sheep was discounted. See Pls.' Opp'n & Cross-Mot. 48. As noted above, Dr. Smith testified to his belief that it would be difficult to determine an appropriate benchmark for calculating fair market value, Def.'s App. 465 (Smith Dep. 80:16), and that payments to other shepherds did not represent fair market value because those payments reflected "what [those shepherds] paid for the rams plus . . . a significant premium and financial incentive for me to buy those animals," id. at 464 (Smith Dep. 79:12-15). Dr. Smith characterized the amounts paid to these shepherds as an "inflated price," id., at 464 (Smith Dep. 79:16), that reflected his professional judgment to offer a substantial premium so that he could purchase the animals, rather than a calculation based upon the value of the sheep, id. at 465 (Smith Dep. 80:8-13). According to Dr. Smith's testimony, those payments made by the USDA to other shepherds were high because those amounts "included . . . what they paid for those animals," id. at 466 (Smith Dep. 81:19-22); see also id. at 474-75 (Smith Dep. 89:10-22 (stating that the other shepherds provided invoices as to what price they paid for their sheep)), whereas plaintiffs did not provide additional documentation to "justify additional costs" for their sheep, id. at 469 (Smith Dep. 84:8-14). Additionally, Dr. Smith was authorized to handle negotiations with the other shepherds on his own, but consulted with the USDA with respect to plaintiffs' sheep. Pls.' App. 110 (Smith Dep. 108:16-20). Moreover, Dr. Smith testified that plaintiffs were advised to "hire [their] own . . . professional appraiser and give [the USDA] the documentation, [but] they did not do that." Def.'s App. 470 (Smith Dep. 85:3-6).

Although plaintiffs are entitled to obtain testimony concerning topic number 20 from an RCFC 30(b)(6) designee, plaintiffs have indicated a willingness to accept designations of Dr. Smith's testimony as defendant's response to topic number 20 with one caveat. In addition to the portions of Dr. Smith's testimony that defendant proffered, plaintiffs seek designation of additional excerpts of testimony that they believe are relevant. See id. at 111 (seeking designation of Dr. Smith's testimony concerning (1) the price range that the USDA paid other shepherds for their rams that were originally purchased from plaintiffs, (2) the USDA's refusal not to offer to purchase plaintiffs' sheep without an appraisal due to the large number of animals in their flocks, and (3) the USDA's concern that the same amount of payment made to the plaintiffs that were made to other shepherds would have been extremely high). Defendant has agreed "to designate the testimony of Dr. Smith which plaintiffs proposed to designate," Def.'s Reply & Opp'n 28 n.12, but with a caveat of its own. It will make those designations "so long as (1) additional testimony from Dr. Smith's deposition is also included, specifically from pages 92, [line] 4 through 120, [line] 5, and (2) testimony from Dr. John Clifford, who was deposed on August 31, 2007, is also included."[31] Id.

The parties' respective positions with respect to designated testimony for topic number 20 are, of course, distinguishable from their positions with respect to topic number 11. See supra

---

[31] According to defendant, it had not received a transcript from Dr. Clifford's deposition at the time it filed its reply and opposition. Def.'s Reply & Opp'n 28 n.12. Therefore, it was "not prepared to identify what that testimony would be." Id.

Part III.C.  Here, defendant does not object to additional testimony being added to designated testimony it has already proffered.  In fact, it seeks inclusion of additional testimony in light of and in response to plaintiffs' request.  Moreover, plaintiffs are willing to accept designated testimony for topic number 20.  Under these circumstances, the court believes that the parties' proposed designations for topic number 20 are reasonable.  Because the parties are willing to proceed with these designations, the court finds that it would be unnecessarily duplicative to reopen Dr. Smith's deposition or seek additional testimony from a different designee on the matters encompassed by topic number 20.  Accordingly, plaintiffs' motion to compel additional testimony for topic number 20 is denied, and defendant's motion is granted.  In lieu of additional live testimony, defendant shall designate those portions of Dr. Smith's testimony requested by plaintiffs, see Def.'s App. 111, as well as the testimony it cites between page 92, line 4 and page 120, line 5 of Dr. Smith's deposition transcript.  Additionally, defendant shall review the testimony of Dr. Clifford, see supra note 31, identify any testimony that is relevant to topic number 20, and make designations accordingly.

### F.  Award of Expenses Pursuant to RCFC 37(a)(4)

As mentioned above, RCFC 26(c) states that the provisions of RCFC 37(a)(4) apply to the award of expenses incurred in relation to a motion for a protective order, RCFC 26(c); supra note 11, and to a motion to compel, supra Part II.C.  The court finds no grounds that warrant the imposition of fees against defendant at this time.  Despite the highly contentious nature of this dispute and the parties' apparent inability to reach common ground on many of these issues, the court finds that, because plaintiffs have not intentionally sought to burden defendant with duplicative requests for discovery and that defendant has not deliberately attempted to evade its obligations under the rules of the court, an award of expenses would be unjust.  See RCFC 37(a)(4)(A).  Accordingly, plaintiffs shall not be awarded any fees associated with bringing their cross-motion to compel.

### IV.  CONCLUSION

For the reasons stated above, defendant's motion for a protective order is **GRANTED in part and DENIED in part**, and plaintiffs' cross-motion to compel the United States to identify and produce an RCFC 30(b)(6) designee(s) on certain topics is **GRANTED in part and DENIED in part** as follows:

1.  Defendant shall provide a designee or designees who can provide testimony concerning topic number 2.  Plaintiffs shall not seek testimony about any document not already identified in topic number 2.

2.  Defendant shall provide a designee or designees who can provide testimony in the areas contemplated by topic number 3, including which regulations (a) apply to the diagnosis of TSEs other than scrapie, (b) apply in the event of an outbreak of a TSE other than scrapie, and (c) were applied to the diagnosis of plaintiffs' sheep with an atypical

TSE of foreign origin.

3.  Defendant shall provide a designee or designees who can provide testimony concerning the matters identified in topic number 11.

4.  Defendant shall provide a designee or designees who can provide testimony concerning the matters identified in topic numbers 12 and 14.  Plaintiffs shall be permitted to inquire into the same matters that were addressed during their RCFC 30(b)(6) NVSL deposition of Dr. Hall.

5.  Defendant shall not be required to provide additional live testimony concerning topic number 20.  Instead, defendant shall designate those portions of Dr. Smith's deposition testimony cited by the parties above.  Defendant shall also, to the extent it has not already done so, review the testimony of Dr. Clifford and designate testimony that is relevant to topic number 20.

In accordance with the parties' request, discovery in this case shall not be extended, except to the extent that additional depositions are required pursuant to this Opinion and Order. The parties shall, **by no later than June 27, 2008**, file a status report proposing deadlines for the completion of additional depositions and the disclosure of additional designated testimony.  No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge